J. W. HINSON, JR. v. MRS. ETHEL MAE HINSON

No. A-5053. Decided June 22, 1955.
Rehearing overruled July 20, 1955.
(280 S.W. 2d Series 731)

562

*Hill, Brown, Kronzer & Abraham, W. W. Watkins* and *W. James Kronzer,* both of Houston, for petitioner.

The Court of Civil Appeals erred in holding that the written instrument or letter, written by testator, as "Supplementary to my Last Will" was a testamentary instrument. Caywood v. Caywood, 216 S.W. 2d 821; Zaruba v. Schumaker, 178 S.W. 2d 542; Dean v. Dickey, 225 S.W. 2d 999.

*Byron G. McCollough,* of Houston, for respondent.

In response cited Barnes v. Horne, 233 S.W. 859; Thomason v. Gwinn, 184 S.W. 2d 542; Page v. Barnes, 258 S.W. 264.

MR. JUSTICE WALKER delivered the opinion of the Court.

Respondent is the widow, and petitioner is the child by a former marriage, of J. W. Hinson, Sr., who died in Harris County on September 16, 1952. We are required to determine whether two instruments executed by the decedent are entitled to probate, either separately or together, as his last will and testament.

On April 20, 1951, the decedent signed a printed and typewritten instrument, containing a formal introductory paragraph declaring the same to be his last will and testament, wherein he directed the payment of his debts, devised and bequeathed all of his property to respondent for her lifetime, and at her death to be divided equally between petitioner and two other named persons, provided that one-third of the estate should be given to petitioner in the event of respondent's remarriage, conferred upon respondent the power of sale, appointed executors, and revoked all former wills. This instrument also bears the signature and seal of a notary public but is not otherwise attested.

Thereafter the decedent wrote in his own handwriting and signed the following on a sheet of hotel stationary:

"Aug. 24, 1951
"Supplementary to my Last will, it still stands as is.

"to my wife Ethel Mae Hinson. my will is in brief case zipper comp. Copy to wife. Copy to my son J. W. Hinson Jr. Everything is yours Darling. Pay the Home off. Sell my car. Have will probated at once. Go to Judge Ewing Boyd, tell him who you are. He will give you all legal advice needed. He is my friend. Sell all of my guns & things you do not need. Sell the Home if you like. But buy another one where you wish to live. Take care of everything I leave you will need it all.

"I love you Darling so much more than my own life. Bye. J. W. Hinson."

After the death of her husband, respondent filed in the County Court an application to probate in which she prayed that both writings, or in the alternative the handwritten instrument alone, be admitted to probate as the last will and testament of the decedent. Petitioner contested the application, contending that neither instrument is entitled to probate, because the first is not attested as required by law and because the second was not executed by the decedent with testamentary intent. The

judgment of the County Court admitting both instruments to probate having been appealed, the cause was tried de novo in the District Court without the intervention of a jury, the only evidence introduced being the two instruments and certain facts stipulated by the parties. Testamentary capacity was admitted, and there was no question of fraud or undue influence. The parties agreed that the typewritten instrument dated April 20th was in existence in its present form at all times since that date, was found in a separate compartment of decedent's brief case after his death exactly as indicated in the handwritten instrument, and is the document to which reference is made in the latter instrument. The District Court sustained petitioner's contentions with respect to the formal typewritten document, and entered a judgment probating only the holographic instrument dated August 24th. This judgment has been affirmed by the Court of Civil Appeals. 273 S.W. 2d 116. It is our opinion that neither instrument can be probated.

■ An instrument is not a will unless it is executed with testamentary intent. The animus testandi does not depend upon the maker's realization that he is making a will, or upon his designation of the instrument as a will, but upon his intention to create a revocable disposition of his property to take effect after his death. It is essential, however, that the maker shall have intended to express his testamentary wishes in the particular instrument offered for probate. Caywood v. Caywood, Texas Civ. App., 216 S.W. 2d 821, wr. ref.; 68 C.J. 604, Sec. 225; 57 Am. Jur. 45, Sec. 8 et seq.

The instrument offered for probate in the Caywood case was a letter written by a Navy pilot to his mother which contained the statement " 'You see my will is made out to you and sister so this will be easy for you to get if I was to have a little hard luck'" The judgment of the District Court admitting the letter to probate was reversed and rendered by the Court of Civil Appeals, which said:

"So, in the instant case, if the deceased meant only to say that he had executed a will and to state to whom he had disposed of his property in such will, then the language used would not constitute a will. * * *."

The court concluded that the writer intended that his mother and sister would receive his property not by the provisions of the letter but by the terms of the will that he said he had previously executed.

In Langehennig v. Hohmann, 139 Texas 452, 163 S.W. 2d 402, 403 the decedent left a will giving all property to his wife in fee simple. The husband and wife had also executed in the presence of witnesses a formal instrument which recited that the parties had theretofore made their wills "and which are and shall be and remain in full force and effect as heretofore executed." There were then a number of provisions expressing the "wish and desire" of the parties as to how the survivor should manage and dispose of the estate. It was held that the writing was an expression of the wishes, but not of the will, of the husband and wife and should not be admitted to probate. In support of his conclusion it was said:

"That this is the true meaning of the instrument is evidenced also by the declaration in mandatory language that the wills already made shall remain in full force and effect as executed. The will of William Hohmann could not remain in full force and effect if the later writing had been intended as a codicil, for the codicil would modify the will or revoke it in part by bequeathing to the children, either by direct bequest or by the creation of a trust in their favor, a part of his property, all of which had been willed to his wife. Thus the writing, if construed as testamentary, would be contradictory in its own provisions. When it is construed as an instrument of recommendation or advice it is not contradictory of itself and all of its provisions are given effect."

■ We agree with respondent that the decedent intended to make a testamentary disposition of his property. It is our opinion, however, that the holographic instrument of August 24th was not intended as a declaration of the manner in which he would have his property pass and vest at his death. He had previously signed an instrument which he expressly declared to be his last will and testament and which the parties agree is the "will" referred to in the informal memorandum. The latter instrument begins with the words "Supplementary to my last will and testament, it still stands as is." This clearly negatives any intention to revoke or modify any of the provisions of the typewritten instrument. At the very outset, the decedent conveys the idea that he has something in mind other than the making of a testamentary disposition of his property. He has already executed an instrument which he thinks is a legal will, and "it still stands as is." He then tells his wife "my will is in brief case zipper comp.", which obviously was not intended to refer to the instrument which he was then writing. Later he advises her to have the will probated at once and suggests that she go to Judge Ewing Boyd for legal advice.

It should also be observed that the decedent had some knowledge of the form and wording of a will. The introduction to the typewritten instrument expressly declares the same to be his last will and testament. In the body of this "will" he used the words "give, devise and bequeath" and "it is my will," directed the payment of debts, appointed executors and revoked former wills. The holographic instrument does not affirmatively state that it is intended or declared to be a will and does not contain language ordinarily used to make a disposition of property. While this circumstance is not controlling, it tends to support our conclusion as to the decedent's purpose in executing the informal memorandum,

The statement "Everything is yours Darling" in an instrument properly executed and intended as a will might be effectual to pass the decedent's property. See Barnes v. Horne, Texas Civ. App., 233 S.W. 859, no writ; Page v. Barnes, Texas Civ. App., 258 S.W. 264, writ dis.; Warnken v. Warnken, Texas Civ. App., 104 S.W. 2d 935, writ dis. w.o.j.; Ripley v. Dearing, Texas Civ. App., 153 S.W. 2d 243, writ ref. w.m. We are not permitted, however, to lift such statement out of context, but must consider the same in the light of all the provisions of the instrument The introductory sentence clearly indicates that the decedent intended that his property should pass and vest under and in accordance with the provisions of the typewritten instrument. By the terms of that "will", his wife took a life estate with power of sale. It is not reasonable to believe, therefore, that the statement "Everything is yours Darling" was intended to operate as a devise of the property to her. We think it is apparent from a reading of the entire instrument that this sentence was written by the decedent for the purpose of informing the respondent that he had devised his property to her. The remaining provisions regarding the preservation of the property and the sale of various items thereof are in the nature of suggestions and advice to the wife for her guidance in the management of the estate he had attempted to devise to her by the "will."

■ ■ Respondent argues that the existence of testamentary intent presents a question of fact, and that we are bound by the implied finding of the trial judge that the holographic instrument was intended as a will. As stated in Brackenridge v. Roberts, 114 Texas 418, 267 S.W. 244, 246, 270 S.W. 1001, "where the evidence is not conclusive of the existence or nonexistence of such an intention, and where its existence or nonexistence is to be deduced from all the facts and circumstances of the case,

the issue must be determined by the jury." When such a case is tried before the Court, the finding of the trial judge on the question would be conclusive. It is our opinion, however, that the evidence in this case conclusively establishes as a matter of law that the decedent intended that his property should pass and vest not by the provisions of the informal memorandum but under and in accordance with the terms of typewritten instrument. Under these circumstances the holographic instrument standing alone cannot be admitted to probate.

Respondent also contends that the typewritten instrument is republished by, or incorporated by reference in, the holographic writing and thus is validated, and that the two instruments, taken together, should be admitted to probate as the decedent's will. Petitioner concedes that the handwritten document evidences the intention of the decedent to republish or incorporate by reference the earlier typewritten instrument.

The doctrine of incorporation by reference has been recognized by at least one Court of Civil Appeals and by a statement in one of our early opinions, but we do not find that it has been expressly approved by a decision of this court. See Allday v. Cage, Texas Civ. App., 148 S.W. 838, wr. ref.; Heidenheimer v. Bauman, 84 Texas 174, 19 S.W. 382. It is well settled, however, that a properly executed and valid codicil which contains a sufficient reference to a prior will, operates as a republication of the will in so far as it is not altered or revoked by the codicil; the will and codicil are then to be regarded as one instrument speaking from the date of the codicil. Boyd v. Frost Nat. Bank, 145 Texas 206, 196 S.W. 2d 497, 168 A.L.R. 1326; Laborde v. First State Bank, etc., Texas Civ. App., 101 S.W. 2d 389, writ ref.; 68 C.J. 861, Sec. 576; 57 Am. Jur. 428, Sec. 626. Most jurisdictions in which the question has arisen also hold that a properly executed codicil validates a prior will which was inoperative or invalid because of defective execution, lack of testamentary capacity or undue influence. See Annotations, 87 A.L.R. 836, 21 A.L.R. 2d 821; 68 C.J. 862, Sec. 577; 57 Am. Jur. 428, Sec. 627 et seq. We note that the latter rule is recognized by implication in Campbell v. Barrerra, Texas Civ. App., 32 S.W. 724, no writ, and will assume for the purpose of this opinion that such rule does obtain in Texas. This brings us to the question which we regard as controlling in the present case.

■ Art. 8283, Vernon's Ann. Texas Civ. Stat., provides that a will "shall, if not wholly in the handwritting of the testator, be attested by two or more credible witnesses above the age of

fourteen years, subscribing their names thereto in their own handwriting in the presence of the testator." The handwritten instrument of August 24th appears on its face to be attested by three witnesses, but the parties have stipulated that the signatures of two of the witnesses were placed on the instrument after the decedent's death and the record is silent as to when or under what circumstances the other witness signed. The writing is simply a signed but unattested holograph. We must decide, therefore, whether an unattested non-holographic instrument may be validated by a subsequently executed and unattested holographic document.

In Adams v. Maris, Texas Com. App., 213 S.W. 622, the trial court admitted to probate an envelope on which was written the words "Henry Boyce" and "Notes," a holographic instrument stating " 'Henry, please except this you & F. Y. Adams for the kindness shown me. E. Vanlaw'," and a promissory note found in the envelope, which note was on a printed form with the blanks completed in the handwriting of the testator. The Commission of Appeals concluded that the note was not incorporated in the handwritten instrument, but in the course of the opinion said:

"The statutes relating to wills require that a written will be attested by two witnesses unless wholly written by the testator. Manifestly, then, if the note referred to is considered a part of the letter of the deceased, the papers admitted to probate must fail as a will, not being attested, and the note being written partly in script and partly in the handwriting of the deceased."

There is a divergence of view in other jurisdictions on this question. Among the cases holding that an unattested non-holographic instrument cannot be validated by incorporation or republication in or by an unattested holograph are Scott v. Gastright, 305 Ky. 340, 204 S.W. 2d 367, 173 A.L.R. 565 (incorporation) ; Sharp v. Wallace, 83 Ky. 584 (republication) ; Hewes v. Hewes, 110 Miss. 826, 71 So. 4 (incorporation) ; and Gibson v. Gibson, 28 Gratt. (69 Va.) 44, (republication). The following is an excerpt from the opinion in Scott v. Gastright, supra:

"We cannot, however, carry the doctrine (of incorporation by reference) so far as to nullify the provision of our statute which requires a holographic will to be wholly written by the testator. If appellee's theory is sound, it would authorize a person to validate a forty page printed, or typewritten, instrument as a

will by simply writing at the end thereof, 'The above is my will' and signing such statement."

The cases of Johnson v. Johnson, ____ Okla. ____, 279 P. 2d 928, and Rogers v. Agricola, 176 Ark. 287, 3 S.W. 2d 26, hold to the contrary, the courts apparently relying entirely on the broad principle that a validly executed codicil operates as a republication of the will. The opinions do not undertake to explain or justify the probate of an unattested non-holographic instrument and do not discuss the provisions of the applicable statutes.

This is not a case in which the extrinsic document is referred to simply for the purpose of identifying the beneficiaries of the will or the property devised thereby, or of ascertaining the intention of the testator in some collateral matter, or of resolving an ambiguity resulting from the language used in the will. The typewritten paper on April 20th is the operative testamentary instrument; without it no part of the decedent's scheme or plan for the disposition of his property can be ascertained. We must look to that document to determine the substance of his testamentary wishes, including the property devised, the identity of the beneficiaries, the estates devised to each, the powers of the life tenant, and the names of the executors. Even if such instrument is regarded as having been incorporated in or republished by the later handwritten memorandum and the two documents are considered together, we are still confronted with the fact that the instrument offered for probate is not wholly in the handwriting of the decedent and is not attested as required by statute. It is our conclusion, therefore, that under the clear provisions of our statute the two instruments involved in this case cannot be admitted to probate.

The judgments of the trial court and of the Court of Civil Appeals are reversed, and judgment is here rendered that the probate of either instrument separately or the two instruments together be denied.

Opinion delivered June 22, 1955.

Rehearing overruled July 20, 1955.