John D. GILLISPIE et al., Appellants,

v.

Sue Gillispie REINHARDT, Appellee.

No. 8373.

Court of Civil Appeals of Texas, Beaumont.

Jan. 24, 1980.

Rehearing Denied Feb. 14, 1980.

William Andress, Jr., Dallas, Balford Morrison, Irving, for appellants.

Patrick B. Gibbons, III and Richard E. Roberts, Dallas, for appellee.

CLAYTON, Justice.

Appellee, Sue Gillispie Reinhardt, a niece of decedent, Ruthie Mae Morris, filed her application to have an undated holographic will of decedent probated. Appellants, two brothers and a sister of decedent, contested the application to probate the will upon the grounds of lack of testamentary capacity and that the purported will "was not executed in the manner required by law." The will was admitted to probate, and contestants have perfected their appeal.

The trial court filed findings of fact and found that—(1) At the time the will was executed, decedent had attained the age of eighteen years; (2) As proven by two or more witnesses, the holographic document is wholly in the handwriting of and signed by decedent; (3) At the time the will was executed, decedent knew the nature and extent of her property, knew the natural objects of her bounty, knew the nature of the transaction in which she was engaged, suffered from no mental infirmities, and was of sound mind; and (4) The will was never revoked.

The first point urged by appellants complains that there is no evidence showing decedent had testamentary capacity at the time of the execution of the will.

The will was wholly handwritten, bearing the signature of Ruthie Mae Morris, and was as follows:

"To whom it may concern. In case of my death all I own to belong to Bertie Lee Morris, my husband. And at his death it is to be divided between Darrel Morris and Sue Reinhardt.

"All outstanding bills are to be paid by them.

Ruthie Mae Morris"

The burden of proof was on appellee to prove testamentary capacity on the part of decedent at the time the will was executed. The will was not dated. However, the will must necessarily have been executed some time after the marriage of the proponent, Sue Gillispie Reinhardt, in 1947 and before the death of decedent's husband, B. L. Morris, in 1970, since the will refers to Mrs. Reinhardt by her married name and contains a dispositive provision in favor of Mr. Morris which clearly contemplated that he was still alive at the time the will was executed.

The law is well settled that the one offering a holographic instrument for probate must establish that it is wholly in the handwriting of the decedent, and that this burden may be met by evidence of two witnesses to the handwriting of the decedent. *Tex.Prob.Code Ann. § 84(b)* (Vernon 1956); *Gunn v. Phillips*, 410 S.W.2d 202 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.). The will need not be dated. *Gunn v. Phillips*, supra; *Kramer v. Crout*, 279 S.W.2d 932 (Tex.Civ.App.—Waco 1955, writ ref'd n. r. e.).

Testamentary capacity is generally defined as the ability to know and understand the business in which the testator is engaged, the effect of the action of making his will, the capacity to know the objects of his bounty, and the claims upon him, and the general nature and extent of his property. *Wright v. Wolters*, 579 S.W.2d 14 (Tex. Civ.App.—Beaumont 1979, writ ref'd n. r. e.); *Hamill v. Brashear*, 513 S.W.2d 602 (Tex.Civ.App.—Amarillo 1974, writ ref'd n. r. e.).

The proper inquiry in a will contest on the ground of testamentary incapacity is the condition of the testator's mind on the day the will was executed. Since there is no direct testimony in the record of acts, demeanor, or condition indicating that testator lacked testamentary capacity on the date of execution, testator's mental condition on that date may be determined from

lay opinion testimony based upon the witnesses' observations of testator's conduct, when prior or subsequent to the execution of the will, *Lee v. Lee*, 424 S.W.2d 609 (Tex.1968).

The witness Billie Cassel testified that she had known decedent during all that period of time between 1942 and the date of the death of B. L. Morris. This was a period of approximately twenty-eight years. Her testimony was that decedent had never shown any signs of forgetfulness, or confusion; decedent's actions were normal; decedent was a "quite solace person" and "for many years [Cassel had] been able to talk to her about things and she [decedent] would help [Cassel] to reason them out and be consoling with [her]"; decedent had the mental capacity to know the people who were dependent on her for support during this period; decedent had the mental capacity to know who her friends and family were; decedent had the mental fitness and capability to know the people to whom she would normally be expected to leave her property; decedent's memory during the entire period of time was "excellent"; decedent was never confused or careless about her property; and that decedent knew the nature and extent of her property during such period of time.

The witness Linda Esposito testified that she had occasions to see decedent's handwriting on letters and signatures on checks and recipes; that she had seen decedent write recipes; after she had moved to New York, decedent would write letters to her about once a month; that the instrument (will) was in the handwriting of decedent and that the signature thereon was that of decedent.

The witness Herman D. Carlisle testified that he had known decedent for thirty years; that decedent's actions, conduct and conversations were normal; he had never observed anything about decedent's conduct that would lead him to believe that she was not "mentally correct . . . not mentally right"; there was nothing about her personal habits—housecleaning, personal cleanliness—that would cause him "to think [decedent] was mentally unfit in any way"; decedent had worked part time in "grocery stores demonstrating stuff, food process and stuff like that."

The witness Joy Deaton testified that she had some business dealings with decedent with reference to purchasing some real estate. The property was a part of the estate of decedent's sister, and decedent was "the Executrix and her brother was the Executor." This witness testified that she talked with decedent often; that decedent handled the "dealings with us"; decedent "would talk with her brother and then she would talk with us. We dealt with her mostly . . . ."; witness discussed the purchase arrangements with her and negotiated the sale through decedent; witness had occasion to see decedent's handwriting; decedent "would write me notes—thank-you notes, . . . and we exchanged recipes"; that she had seen decedent's signature; decedent had given witness "several books and she put her name in the book"; she had seen decedent's signature on the deed given at the time of purchase of her sister's estate; that the instrument (will) was in the handwriting of decedent, and the signature thereon was that of decedent.

We have carefully reviewed the entire record before us, and the testimony given by the witnesses referred to above supports the findings of the trial court as to the testamentary capacity of the decedent. Such testimony was sufficient to show that her testamentary capacity was present and existed throughout that period of time in which the will was written and signed. There is no evidence in this record to the contrary. See *Gunn v. Phillips*, supra. Moreover, our Supreme Court in *Carr v. Radkey*, 393 S.W.2d 806, 814 (Tex.1965), states: "[A] rational and sensible holographic will, prepared by a testator or testatrix, is evidence of the fact that the will was written during a lucid interval." The handwriting of the will was identified and proven to be that of decedent by two witnesses, and the signature thereto was that of decedent.

When the proponent has made out a prima facie case of testamentary capacity

at the time the will was executed, and contestant has not destroyed such case by evidence introduced, the will should be admitted to probate. *Taylor v. Taylor*, 281 S.W.2d 232 (Tex.Civ.App.—San Antonio 1955, writ ref'd n. r. e.). In the case at bar, appellants have offered no testimony whatsoever.

■ Appellants refer to, although not raised by point of error, appellee's failure to prove the will was never revoked. Under the circumstances of this case, there is no need to prove by direct evidence the non-revocation of the will. Once it is proved that a will is otherwise valid and has been executed with the formalities and solemnities and under the circumstances required to make it a valid will, a rebuttable presumption of continuity of the will is recognized, and it is not necessary for the proponent to produce direct evidence of non-revocation in the absence of evidence casting suspicion on its being the testator's last will, or tending to destroy the presumption. *Farr v. Bell,* 460 S.W.2d 431 (Tex.Civ.App. —Dallas 1970, writ ref'd n. r. e.).

We have considered the other points raised by appellants, and, being without merit, they are overruled.

The judgment of the trial court is affirmed.

AFFIRMED.