Gwendolyn A. TRIM, Appellant,

v.

Verneice Stanford DANIELS, Appellee.

No. 01–91–00046–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 25, 1992.

Rehearing Denied Oct. 7, 1993.

Carnegie H. Mims, Jr., Houston, for appellant.

Teresa S. Richbourg, Houston, for appellee.

Before OLIVER–PARROTT, MIRABAL and PRICE,[1] JJ.

## OPINION

PRICE, Justice (Assigned).

This appeal is from a summary judgment, holding that a writing on the back of a greeting card constituted a valid holographic will.

On October 19, 1989, Bill Hayes Daniels was killed in an automobile/train collision. At the time, he was 36 years old and a practicing attorney. On December 14, 1989, Verneice Daniels filed an application to probate a holographic will. The will was probated as a muniment of title on January 3, 1990. It consists of a short declaration, handwritten on the backside of a printed greeting card. It reads as follows:

Last Will:

I leave everything to Verneice Daniels.

BHD.

Note: Handle pursuant to the incomplete will that Doris has.

A poem entitled: "The Ten Secrets of a Successful Relationship" was printed on the frontside of the greeting card. At the bottom of the frontside, the decedent signed his full name, Bill Hayes Daniels. Underneath his signature, "(on back)" is written. Appellee received the greeting card in the mail. The envelope was hand-addressed by the decedent. His name and return address were handwritten at the top lefthand corner on the front of the envelope. It was postmarked September 29, 1989. The "incomplete will" was not made a part of the record, and thus, is not before this Court.

On February 22, 1990, appellant filed a petition contesting the validity of the will, maintaining the decedent died intestate. Both appellant and appellee claim to be the common-law wife of the decedent. Appellant has a son, Theron, who she maintains is the issue of her common-law marriage with the decedent. Both parties moved for summary judgment. On November 30, 1990, the trial court rendered judgment sustaining appellee's motion and finding that the writing constituted a valid holographic will signed by the testator with clear testamentary intent.

The standards for reviewing a summary judgment are:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985).

Appellant does not challenge the authenticity of the handwriting. Rather, in three points of error, she asserts there are fact issues regarding whether the decedent intended the writing to be a holographic will. Specifically, she alleges: (1) the writing does not identify the name of the testator, it merely says "Last Will;" (2) because there is no antecedent for the pronoun "I," the testator is incapable of being determined; (3) the initials at the end of the statement do not properly identify the testator; and (4) the statement "Note: Handle pursuant to the incomplete will that Doris has," indicates the writing is not the decedent's will.

A valid will is a document executed with testamentary intent. The animus testandi does not depend on the maker's realization that he is making a will, or upon his designation of the instrument as a will, but upon his intention to create a revocable disposition of his property to take effect after

---

1. Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

**10**

his death. It is essential, however, that the maker shall have intended to express his testamentary wishes in the particular instrument offered for probate. *Hinson v. Hinson,* 154 Tex. 561, 280 S.W.2d 731, 735 (1955).

■ To be considered for its testamentary effect, a holographic instrument must be wholly in the handwriting of the decedent. *Gillispie v. Reinhardt,* 596 S.W.2d 558, 559 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *Gunn v. Phillips,* 410 S.W.2d 202, 205 (Tex.Civ.App.—Houston 1967, writ ref'd n.r.e.); TEX.PROB.CODE ANN. art. 84(b) (Vernon Supp.1992). A signature by initials is sufficient to execute the instrument as a will, if it is testamentary in character, and it need not be dated. *Gillispie,* 596 S.W.2d at 559; *Gunn,* 410 S.W.2d at 207; *Barnes v. Horne,* 233 S.W. 859, 860 (Tex.Civ.App.—Austin 1921, no writ). A holographic will should be liberally construed to effect the testator's intent because the law favors testate over intestate passage of property. *Lane v. Sherrill,* 614 S.W.2d 619, 622 (Tex.1981); *Gilkey v. Chambers,* 207 S.W.2d 70, 73 (Tex.1947).

■■ It is significant to note here, that decedent, at the time he executed the holographic will, was a practicing attorney. As such, we analyze the questioned document as one written by a person with knowledge of the form and wording of a will. *See Bergin v. Bergin,* 315 S.W.2d 943, 947 (Tex.1958) (lay person cannot be deemed to have used words in the same technical sense the words might have if they were used by an attorney). Paying deference to one with such knowledge, we conclude that the only rational interpretation of the instrument in question is that "BHD" intended to bequeath his entire estate to Verneice Daniels upon his death. The language is clear, direct, and unambiguous. The front side of the greeting card even directed the reader to the backside so that the written information would not be overlooked. Because appellant has challenged neither the identity of "BHD," as that of the decedent, nor the identity of Verneice Daniels, as that of beneficiary, we must conclude the decedent intended to will all of his property to appellee.

Appellant asserts the statement following decedent's initials, "Note: Handle pursuant

to the incomplete will that Doris has," destroys any testamentary intent decedent might otherwise have expressed in the writing above the initials. As noted earlier, the record reflects no reference to an incomplete will in Doris' possession. The only reference to an incomplete will appears in decedent's brother's affidavit, wherein, he makes mention of having seen a document in Verneice's possession that devised a $20,000 gift to appellant's son, Theron. The affidavit stated that while the document was unsigned, it was in decedent's handwriting.

■ We point out that the questioned phrase follows decedent's initials and is an instructional "note." For this phrase to have significance, affecting decedent's testamentary intent, the incomplete will must be capable of being identified and incorporated by reference, thus, made a part of the holographic will.

■ However, we conclude the statement making reference to an "incomplete will" does not identify and incorporate such instrument. The words "pursuant to" are not equivalent to "incorporated." Mere reference to the "incomplete" document is not only insufficient for incorporation, but insufficient to adequately describe such document for it to be capable of identification. The testator's intention to incorporate by reference must be clearly expressed in the will. *See Taylor v. Republic Nat'l Bank of Dallas,* 452 S.W.2d 560, 563 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.) (a reference to an "attached" document is neither sufficient to incorporate by reference nor sufficient to describe the document with particularity). The instruction, "handle pursuant to," following his testamentary intent, is an expression of the decedent's desire for his survivor to manage and dispose of his estate in a particular manner. It is not intended to control the disposition of his estate. It is an expression of his desire not of his will, thus, lacks testamentary character. It must be disregarded in favor of his general intent.

■ Decedent's intent was clear when he signed the will, "I leave everything to Verneice Daniels." He obviously intended to

leave his entire estate to Verneice. The instructional "note" is merely precatory, not mandatory, therefore, it can have no binding legal effect. *See Taylor,* 452 S.W.2d at 560 (a residual bequest to a religious group for the purpose of establishing, constructing, and administrating a hospital, while a legitimate charitable bequest, was not enforceable as to the establishment of the hospital because the purpose clause was merely precatory and could not replace testator's mandatory intent of making a charitable gift); *Langehennig v. Hohmann,* 139 Tex. 452, 163 S.W.2d 402, 406 (1942) (a document, executed subsequent to preexisting wills, expressing the desires and wishes of the testators for the manner in which the final distribution of their estate and property was to be made was not subject to probate because such directions were precatory and not mandatory).

Thus, it is our opinion that, as a matter of law, the decedent intended his property should pass and vest, not by the provision of the instructional note, but under and in accordance with the statement preceding his initials

Appellant's first three points of error are overruled.

In her fourth point of error, appellant asserts the trial court erred in not granting her motion for summary judgment. Because of our disposition of points of error one, two, and three, appellant's fourth point of error is likewise overruled.

The summary judgment is affirmed.

140927

132101

233524

PROBATE COURT 4

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

# The Ten Secrets of a Successful Relationship

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

~ Having a wonderful partner. (Which I do.)

~ Communicating. (We try. And we'll get better.)

~ Being intimately involved in one another's lives. (Open, honest, touching, together. The closer we are, the more secure I feel.)

~ Being happy as individuals. (And bringing good things to the relationship from both directions.)

~ Reaching out for dreams together. (One of mine already came true: you.)

~ Always being there for one another. (Always.)

~ Overlooking the few flaws. (But cherishing the thousands of things that are so wonderful.)

~ Remembering that rainbows follow rain. (Which I'll never forget as long as I have you.)

~ Always sharing. (Friends, families, dreams, desires. Weaving together the fabric of our lives.)

~ And always caring. ("Always" is a long, long time. But "always" is how I want our relationship to be... with us loving one another, as happy and as giving and as thankful as any two people could be.)

—Chris Gallatin

FILED

Dec 14, 3 02 PM '89

(on back)

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

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

*Last Will:*

*I leave everything to Verneice Daniels.*

*BD.*

*NOTE: Handle pursuant to the incomplete will that Doris has.*

---

MIRABAL, Justice, dissenting

I dissent.

The question before us is whether the involved instrument is a will, as a matter of law. We are not concerned with construction of the instrument, but solely with whether it is a will. In my opinion, the reasoning and holding of the Texas Supreme Court in *Hinson v. Hinson*, 154 Tex. 561, 280 S.W.2d 731, 733 (1955), is dispositive of the issue in this case.

An instrument is not a will unless it is executed with *testamentary intent*. *Hinson*, 280 S.W.2d at 733. The existence of testamentary intent does not depend on the maker's designation of the instrument as a will, but upon the maker's present intention, by that specific instrument, to create a disposition of his property to take effect after his death. *Id.* It is essential that the maker shall have intended to express his testamentary wishes in the particular instrument offered for probate. *Id.*

The statement "Everything is yours Darling" (or, as in the present case, "I leave everything to Verneice Daniels"), in an instrument properly executed and intended as a will, might be effectual to pass the decedent's property. *Hinson*, 280 S.W.2d at 734. However, we are not permitted to lift such statement out of context, but must consider the same in the light of all the provisions of the present instrument. *Id.* The additional statement in the instrument, "Note: Handle

pursuant to the incomplete will that Doris has," may indicate that the deceased intended that his property should pass and vest in accordance with the provisions of another document.

Did the "incomplete will" provide for appellee to receive a life estate only, or did it establish a trust for the benefit of appellee? We do not know, because it is not in the summary judgment record. If, as in the *Hinson* case, the "incomplete will" provided for the wife to receive only a *life estate with power of sale*, then it would *not* be reasonable to believe that the later holographic statement, "Everything is yours Darling" (or "I leave everything to you"), was intended to operate as a devise of the property in *fee simple*.

Where the evidence is not conclusive of the existence or nonexistence of a testamentary intent, its existence or nonexistence is to be deduced from all the facts and circumstances of the case and the issue must be determined by the jury. *Hinson*, 280 S.W.2d at 735. Although, in the present case, the summary judgment record does not contain the incomplete will, we do have in the record the affidavit of Charles Daniels, one of the decedent's brothers, which says in part:

> In fact, a week after Bill was killed, Verneice showed me a copy of Bill's will. It was unsigned, and Bill had made a lot of corrections on the draft I saw. I recognized the scribbling as Bill's handwriting. I noticed, also, that Bill had left Theron[1] $20,000.00. I do not remember any other provision of the will, but I do remember it was a will and that Theron was included in the will. I remember, also, that it was unsigned and had not been notarized.

Additionally, the summary judgment evidence includes an affidavit from appellant, Gwendolyn Trim, the mother of Theron, saying that appellee called her the night Bill died and told her "Bill had made provisions for Theron and that she would make sure that Theron received the money his Father had left him."

On this appeal, in deciding whether there is a material fact issue precluding the proper granting of summary judgment, we must take as true the evidence favorable to the nonmovant, who is appellant here. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in appellant's favor, and any doubts resolved in her favor. *Id.*

If, in fact, the "incomplete will that Doris has" provides for *other than* fee simple title to all Bill's property to vest in appellee on Bill's death, then I would conclude, as a matter of law, that the probated instrument in question is *not* a will. I believe the reasoning in *Hinson* requires such a result.

In the present case, however, the affidavit of Charles Daniels, regarding his recollection of what the "incomplete will" said, does not conclusively establish the content of the document, and therefore, a material fact issue exists regarding "the incomplete will that Doris has." Accordingly, I would sustain appellant's first three points of error (asserting the trial court erred in granting appellee's motion for summary judgment), and I would overrule appellant's point of error four (asserting appellant herself was entitled to summary judgment declaring the holographic instrument is *not* a will).

I would reverse and remand the cause for trial.

---

1. The summary judgment evidence is conflicting with regard to whether Theron was the son of Bill Daniels, the decedent. One of Bill's brothers, his sister, and appellant each filed affidavits swearing Theron is Bill's son. However, Bill's other brother, appellee, Bill's secretary, and two long-time friends each swore Bill had no children at the time of his death.