**Olinda Leticia Reyes De Martinez AYALA, et al., Appellants,**

v.

**Hugo MARTINEZ, Administrator of the Estate of Sergio E. Martinez Ayala, Deceased, Appellee.**

No. 13–92–541–CV.

Court of Appeals of Texas, Corpus Christi.

June 30, 1994.

Rehearing Overruled July 28, 1994.

Richard J.W. Nunez, Robertson & Nunez, Brownsville, for appellants.

John Williamson, Brownsville, for appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

---

1. Sergio Martinez Ayala had a wife and family and also a long-time woman companion named

## OPINION

YAÑEZ, Justice.

In September of 1989, the decedent, Sergio Martinez Ayala, entered a San Antonio hospital for a serious operation. Appellees contended that there he made a holographic will. The decedent had a previous will that he executed in Mexico on August 4, 1969. Appellants urged probate of the foreign will and the appellees propounded the holographic will. The trial court found the September 1989 document to be a valid holographic will. The court probated both wills, the holographic will controlling where conflicts between it and the prior will were apparent. The court also appointed the decedent's brother, Hugo Martinez, administrator of the estate. Appellants oppose these orders on appeal and by two points of error complain that the trial court erred in probating the holographic will because it lacked indicia of testamentary intent and in appointing Hugo administrator in opposition to statutorily prescribed preference. We affirm.

By point one, appellants contend that the handwritten document fails as a holographic will because it lacks testamentary intent. Essentially, appellants claim that the writing is inadequate as a matter of law because its language does not show "an intention to create a revocable disposition of the decedent's property to take effect after his death." *Hinson v. Hinson*, 154 Tex. 561, 280 S.W.2d 731, 733 (1955). Rather, appellants argue, the writing evidences an intent to make an immediate and irrevocable partition of personal property. The writing in question reads, in relevant part, as follows.

Hugo:

Whatever is in Jorge's, Toti's,[1] and your name at the First National Bank in Rio Grande, Texas, will continue to remain in your names. Whatever is in my name at that same bank, at the Texas Commerce Bank which has just changed, before it was the National Bank of Commerce, and at the (illegible) Alamo Bank of San Antonio, whether it's in your name or any other or

"Toti."

(mine), divide it into 30% for you, 30% for Jorge, and 40% for Toti, including what is in Monterrey at the Banco de (*illegible*) B. Mex. where you are listed as the beneficiary and my checking account at B. Mex. If any of this is in Sergio's, Jorge's, Olivia's and Barbara's name, it shall remain that way unless something can be done to change it to your name, or to any of your names, so it will be divided up equally with 30 for you, 30 for Jorge, and 40 for Toti. . . .

The safety deposit boxes at National Bank of Commerce are to be opened by Toti and Hugo together and divided according to the same amount.

The issue presented is whether this document evidences testamentary intent. An instrument is not a will unless it is executed with testamentary intent. *Hinson,* 280 S.W.2d at 733. The intent required is to make a revocable disposition of property to take effect after the testator's death. Intent is to be determined by the language used in the will—we are to ascertain not what the testator meant to express apart from the language, but what the words he has used do express. *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885, 888 (1960). Extrinsic evidence may be admitted to explain the decedent's meaning which is set forth in the words of the will. *Huffman,* 339 S.W.2d at 888.

The language in the writing above is ambiguous regarding testamentary intent. No explicit statement declares that the writing is a will or that the property division will take place only after the decedent's death. It has the tone of instructions to a financial agent. Still, the document was addressed to "Hugo," the decedent's brother. Use of the words "shall remain," "will be divided," imply a future division of property. Further, the reference to Hugo being listed as "the beneficiary" suggests a post-mortem scheme of division. The focal issue is whether this document shows intent to divide property conditional on the testator's death or whether it merely evidences instructions for a current partition of property. The trial court received extraneous evidence that Sergio Martinez Ayala was in the hospital for a serious operation when he wrote the handwritten document. Such evidence was admissible to clarify the meaning of the words in the document and appellant does not complain of the admission of this evidence. The writing shows testamentary intent. The trial court did not err in probating it as a valid holographic will. Point one is overruled.

By point two, appellant complains that the trial court erred by appointing Hugo Martinez, the decedent's brother, as administrator of Ayala's estate. The trial court found Olinda Leticia Reyes de Martinez Ayala unsuitable to serve as administratrix of the estate. The judge appointed Hugo Martinez instead. The Probate Code specifies an order of preference for administrators, favoring the named executor, the surviving spouse, or the principal legatee over a devisee, legatee, or other family member. TEX.PROB.CODE ANN. § 77 (Vernon 1980). Appellant contends that the trial court erred in appointing Hugo because the appointment does not comport with the mandatory provisions of the statute. A person may be disqualified from serving as an executor or administrator of an estate if the court finds that person unsuitable. TEX.PROB.CODE ANN. § 78 (Vernon 1980). The trial court entered findings of fact and conclusions of law in which it found appellant unsuitable to serve as administrator. Appellant does not challenge the sufficiency of the evidence supporting this finding. Nevertheless, we have reviewed the evidence in the record on this issue. The decedent's surviving spouse, Olinda, testified at the hearing below that she was claiming a community interest in some of the property. Appellees opposed Olinda's appointment because her community property claim created a conflict of interest that rendered her unfit. Such a conflict of interest has been held to constitute unsuitability. *Formby v. Bradley,* 695 S.W.2d 782, 784–85 (Tex.App.—Tyler 1985, writ ref'd n.r.e.). The evidence supports the trial court's fact finding. No abuse of discretion is shown. We overrule point two.

The trial court's judgment is AFFIRMED.