**In the ESTATE OF Ruby Fowler CORNES.**

No. 09–04–447 CV.

Court of Appeals of Texas, Beaumont.

Submitted Aug. 18, 2005.

Decided Aug. 31, 2005.

J. Randall Walker, Jasper, Richard J. Clarkson, Beaumont, for appellant.

Gary H. Gatlin, Jasper, for appellees.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

Lloyd Fowler, Sr. appeals from the trial court's denial of his Application to Set Aside Order Probating Will, to Reinstate Application to Probate Holographic Will and Application for Bill of Review. In this instrument, Lloyd Fowler, Sr. challenged the admission to probate of a will signed by his mother, Ruby Fowler Cornes, and requested that a holographic will be admitted to probate. In four issues, Lloyd complains that he did not have notice of the application to probate the subject will; that the court erred in admitting the subject will to probate; that judicial estoppel operates to prevent the probate of the subject will; and, that the great weight and preponderance of evidence at the bill of review hearing supported a holographic will that he offered as Ruby Cornes's last will and testament. We reverse and render in part and affirm in part.

## BACKGROUND

All of the parties to this appeal, either by marriage or birth, are members of the same family. For purposes of clarity, we refer to the parties by first name.

Ruby died May 5, 1998. At the time of her death, she was survived by her husband, Wilburn H. Cornes, and five of her children from a prior marriage, Charles H. Fowler, John W. Fowler, Marilyn Fowler Walton, Lloyd Fowler, Sr., and Jewel Elizabeth ("Libby") Fowler.

Ruby executed a will on December 19, 1997 (the 1997 Will). At the time of her death, Ruby owned 52.74 acres in Newton County, Texas and under the 1997 Will gave eight acres each to Charles, John and Marilyn, four and seventy-two hundredths acres to Lloyd, and the remainder, which included her home and over 24 acres, to Libby.

Ruby signed a holographic will in 1998 (the 1998 holographic Will). In the 1998 Will, Ruby directed that Lloyd and Libby receive the 52.74 acres of land in Newton County. The most significant difference between the gifts Ruby made in the 1997 Will and the 1998 Will was the distribution Ruby made of her land in Newton County. Ruby named her sons-in-law, Glen Walton (Marilyn's husband, hereafter Glen) and Charles Darwin Fowler (Libby's husband, hereafter C.D.) as co-executors in both the 1997 and 1998 Wills.

On May 2, 2002, three years and 362 days after Ruby's death, C.D. applied to probate the 1998 holographic Will in the county court of Newton County, Texas. A series of amended applications followed, and the initial hearing regarding the attempt to probate the holographic will occurred on June 25, 2002. No order was ever entered to probate the holographic will. All of the applications to probate the 1998 holographic Will assert that "Decedent left a valid Will dated 1998, which was never revoked and is filed herewith."

On January 17, 2003, four years, eight months, and twelve days after Ruby's death, Glen and C.D. filed to probate the 1997 Will, and jointly filed a document titled Application for Probate of Will and Issuance of Letters Testamentary. The executors also changed lawyers. The 2003 application, for the first time, asserts:

> Decedent left a written Will ("Will") dated the _____ day of _____, 1998, which has previously been filed herein.

Applicants do not believe that said document meets the requisites of a Will as prescribed by the State of Texas. If the Court should so find that the document [dated] the _____ day of _____, 1998 entitled Last Will and Testament of Ruby Lee Fowler Cornes, does not meet the requisites of a Will, then Applicants would request that the Last Will and Testament attached hereto, dated December 19, 1997 be admitted to probate. Said document dated December 19, 1997 is a valid written will and has never been revoked and is filed herewith.

Although the 2003 application to probate the 1997 Will recites that citation was requested, the record reflects that no citations were issued. On January 17, 2003, the same date the application was filed to probate the 1997 Will, the county judge signed an order admitting the 1997 Will to probate, and found that the 1998 holographic Will "was not executed with the formalities nor meet[s] the requisites of a Texas will."

On June 13, 2003, Lloyd filed his application to set aside the order probating the 1997 Will, pursuant to Section 93 of the Texas Probate Code, and also filed a bill of review under Section 31 of the Texas Probate Code. TEX. PROB.CODE ANN. §§ 31, 93 (Vernon 2003). In his application, Lloyd complained that he was not given notice of the probate hearing at which the county judge admitted the 1997 Will to probate, and also complained of other errors in the county judge's decision to admit the 1997 Will to probate. On June 13, 2003, the county judge, on his own motion, transferred the case to the district judge of Newton County. On June 8, 2004, the district court held a trial on Lloyd's application. No party requested a jury trial on the contested matters. Following the hearing, the district court denied Lloyd's

request to set aside the order admitting the 1997 Will to probate.

**NOTICE**

■ The Probate Code, Section 128B requires notice by service of process to each heir whose address can be ascertained by the applicant with reasonable diligence *before* the probate of the will. TEX. PROB.CODE ANN. § 128B (Vernon 2003). We hold that the county judge erred in probating the 1997 Will without proper notice as required by the Probate Code, and that the district court erred in failing to grant the Bill of Review wherein Lloyd complained of the absence of proper notice.

However, the Probate Code further allows *de novo* review of the decision by a county judge to admit a will to probate. TEX. PROB.CODE ANN. § 5(b) (Vernon 2003); *Trevino v. Turcotte*, 564 S.W.2d 682, 686 (Tex.1978)(probate matters having their origin in county court are tried de novo in district court). Because Lloyd timely filed his request with the county court to review the admission to probate of the 1997 Will, he was free to assert all grounds to demonstrate that the 1998 holographic Will was Ruby's last valid will and testament and that it should have been admitted to probate, or to demonstrate any reasons that the 1997 Will should not have been admitted to probate.

The record shows that Lloyd was given a full opportunity to try all of the issues that he raises in this appeal in a trial de novo in district court. Lloyd also does not assert that he was foreclosed from fully developing any issue at the trial in the district court. "The sine qua non of a de novo trial as that term is used to describe a retrial of a matter or controversy theretofore tried by another tribunal is the nullification of the judgment or order of the first tribunal and a retrial of the issues on

which the judgment or order was founded." *Southern Canal Co. v. State Board of Water Eng'rs*, 159 Tex. 227, 318 S.W.2d 619, 622 (Tex.1958).

In the trial de novo, the district court could have granted Lloyd full relief from any error made by the county judge in admitting the 1997 Will to probate. On proper proof, the district court could have admitted the 1998 holographic Will to probate. Thus, any error committed by the county court's failure to issue citation to give Lloyd notice of the hearing was rendered harmless. *London v. Chandler*, 406 S.W.2d 203 (Tex.1966)(party must show prejudice when complaining about defect in citation). We hold that under the record in this case the failure to give Lloyd notice of the January 17, 2003 hearing was harmless error.

## ERROR IN ADMITTING 1997 WILL TO PROBATE

 Lloyd argues that the four-year limitation period of Section 73(a) of the Texas Probate Code prohibits the admission of the 1997 Will. Section 73(a) provides:

> (a) No will shall be admitted to probate after the lapse of four years from the death of the testator unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within the four years aforesaid; and in no case shall letters testamentary be issued where a will is admitted to probate after the lapse of four years from the death of the testator.

TEX. PROB.CODE ANN. § 73(a)(Vernon 2003). As used in this statute, "default" means "failure to probate a will due to the absence of reasonable diligence on the part of the party offering the instrument." *Schindler v. Schindler*, 119 S.W.3d 923, 929 (Tex.App.-Dallas 2003, pet. denied)(cit-

ing *House v. House*, 222 S.W. 322, 325 (Tex.Civ.App.-Texarkana 1920, writ dism'd w.o.j.)).

Ruby died May 5, 1998. The 1997 Will was first offered and also admitted to probate on January 17, 2003. The proponents of the 1997 Will had the burden of showing an excuse to justify their failure to timely offer the 1997 Will for probate. *Schindler*, 119 S.W.3d at 929. The only excuse offered by any of Ruby's children regarding the delay in submitting the 1997 Will to probate was Libby's testimony that the delay in probating the will was "out of respect for [their step-] dad [Wilburn Cornes]". The record also reflects that Wilburn died in October, 2002. It is possible that Wilburn might have opposed either of these wills. Under both wills, Ruby intentionally disinherited him. For example, Ruby states in her 1997 Will, "I have intentionally made no provision in this Will for my husband, Wilburn Hurshel Cornes, and I direct that he shall take none of my property either under this Will or by the laws of intestacy." Ruby wrote a similar provision in her holographic will.

Nevertheless, we have found no opinion in which an appellate court construing Section 73 of the Probate Code has recognized respect for potential heirs as an excuse for the devisees' delay in presenting a will for probate. According to Libby, she and her sister Marilyn, and the co-executors of the 1997 Will, Glen and C.D., were all aware of the existence of the 1997 Will and the 1998 holographic Will on the day of the funeral. Libby testified that they notified Lloyd of the existence of both wills on the following day. According to Lloyd, within a month or so of Ruby's death, he went with Libby and John to a lawyer's office in Jasper where he saw the holographic will. Charles and John, Ruby's other two sons, although present, did not testify at the hearing. Thus, there is no evidence in the

record that shows an absence of knowledge by any of the parties to this appeal of the existence of the 1997 Will.

 Family agreements to delay the probate of a will about which they had knowledge are not sufficient to excuse noncompliance with the four-year limitation of the Probate Code. *Brown v. Byrd*, 512 S.W.2d 753, 757 (Tex.Civ.App.-Tyler 1974, no writ); *Armendariz De Acosta v. Cadena*, 165 S.W. 555 (Tex.Civ.App.-El Paso 1914, error ref'd).

We find no evidence of a legal excuse in the record for the failure of these parties to timely apply to probate the 1997 Will. Because the proponents of the 1997 Will did not carry their burden to establish they were not in default of the time limits prescribed by the Probate Code, the district court erred in denying the application to set aside the order probating the 1997 Will. The district court further erred in ordering that the 1997 Will remain admitted to probate. In light of our disposition of this issue, we do not reach Lloyd's argument that the 1997 Will proponents were judicially estopped from probating the 1997 Will.

### 1998 HOLOGRAPHIC WILL–HANDWRITING REQUIREMENT

 In its findings of fact, the district court found that the 1998 holographic Will was not proven by two witnesses to be wholly in the handwriting of Ruby. Section 84(b) of the Texas Probate Code requires that a holographic will, if not self-proven, be proven by two witnesses. TEX. PROB. CODE ANN. § 84(b) (Vernon 2003).

There were two witnesses who testified at the hearing before the district judge that the 1998 holographic Will was in Ruby's handwriting. Lloyd Fowler, the contestant, and Faye Shipman, a questioned-documents examiner, both testified that the 1998 holographic Will was all in Ruby's handwriting. Shipman was cross-examined regarding the fact that in one place on the will, the date was originally written as 1996, but the 6 was written over to signify an 8, resulting in the date's being 1998. Shipman attributed this change to the author's correction of a mistake. Other parts of the 1998 holographic Will were dated 1998, without correction. Shipman was also cross-examined about the fact that the will was written in different pens. She agreed that the will may have been written in more than one sitting.

Although both Libby and Marilyn testified at the hearing before the district court, neither of them testified that the 1998 holographic Will was not in Ruby's handwriting. C.D., Libby's husband and one of the co-executors, was the sole witness who questioned whether the handwritten will was in Ruby's handwriting. C.D. testified on cross-examination:

Q. Do you think that Ms. Cornes wrote that handwritten Will dated on the blank day of blank, 1998.

A. I think that she wrote some of it. I don't think that she wrote all of it.

However, no predicate was laid showing that C.D. was familiar with Ruby's handwriting. C.D. also admitted to giving testimony before the county judge that the 1998 holographic Will was all in Ruby's handwriting. C.D. was the only witness who testified that the will was not all in Ruby's writing.

 Lloyd, as the proponent of the holographic will, had the burden of proving that the instrument was "wholly in the handwriting of the testator." TEX. PROB. CODE ANN. § 84(b) (Vernon 2003); *Gunn v. Phillips*, 410 S.W.2d 202, 205 (Tex.Civ. App.-Houston 1966, writ ref'd n.r.e.). The testimony of two of the witnesses, Lloyd Fowler and Faye Shipman, an expert, was clear, direct and positive on the question of

whether the 1998 holographic Will was all in Ruby's handwriting. The only contradictory evidence on the issue, from C.D., was not clear, positive or direct; and, C.D.'s opinion suffers from the fact that there was no proof that C.D. was familiar with Ruby's handwriting. When a witness is not properly qualified to testify, opinion testimony amounts to conjecture and has no probative value. *Leitch v. Hornsby,* 935 S.W.2d 114, 119 (Tex.1996).

Lloyd argues that as a matter of law, on this record, the 1998 holographic Will should have been admitted to probate. But, we also note that Lloyd Fowler's and Faye Shipman's testimony that the will was wholly in Ruby's handwriting was opinion testimony. Neither Faye Shipman nor Lloyd testified that they saw Ruby write the holographic will. While their testimony raised a fact issue, under similar circumstances, two of our sister courts have stated that the testimony of a witness who can testify the writing is the decedent's, but who did not actually see the instrument written, is not considered conclusive on whether a will is entirely in the decedent's writing. *Lopez v. Hansen,* 947 S.W.2d 587, 590 (Tex.App.-Houston [1st Dist.] 1997, no pet.); *In re Estate of Roberts,* 661 S.W.2d 177, 181 (Tex.App.-San Antonio 1983, no writ). In these two cases, the appellate courts upheld trial courts' orders rejecting holographic wills when the record contained contradictory evidence on whether the wills were wholly in the writing of the decedents. As recently noted by the Texas Supreme Court, "It is impossible to define precisely when undisputed evidence becomes conclusive." *City of Keller v. Wilson,* 168 S.W.3d 802, 815 (Tex.2005).

The co-executors, Glen and C.D., argue that the fact that there were no eyewitnesses to Ruby's writing the 1998 holographic Will permitted the trial court to conclude that the will was not in her handwriting. The co-executors cite *Lopez* as authority for their contention. However, in *Lopez,* the proponents of the holographic will were not family members, and their testimony was not free from contradiction. 947 S.W.2d at 589–90. In *Lopez,* the record also contained testimony from a properly qualified witness familiar with the decedent's handwriting who testified that the signature on the will was not the decedent's. *Id.* at 590. *Lopez* is distinguishable because there was no testimony at the trial contest over Ruby's wills from a properly qualified witness that the handwriting on the 1998 holographic Will was not Ruby's. This type of evidence was present in *Lopez.*

■ "The general rule is that opinion testimony, even when uncontroverted, does not bind the jury unless the subject matter is one for experts alone[.]" *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 338 (Tex.1998). Although we have no evidence in this record of the accuracy of handwriting experts, in the absence of a record demonstrating a very high degree of accuracy, the better practice in our opinion is to treat such evidence as nonbinding. Nevertheless, "proper review ... prevents [fact-finders] from substituting their opinions for undisputed truth." *City of Keller,* 168 S.W.3d at 817. The testimony in the record from witnesses who were qualified as familiar with Ruby's writing reflected that the 1998 Will was in Ruby's writing. The only testimony contrary to those opinions came from a witness not shown to be familiar with Ruby's writing. Having carefully reviewed all of the testimony in the record, we hold that the district court's finding that the 1998 holographic Will was not in Ruby's writing is against the greater weight and preponderance of the evidence.

### HOLOGRAPHIC WILL–OTHER PROBATE CODE REQUIREMENTS

The district court also found in its findings of fact that the 1998 holographic Will "does not meet the requisites of a Will as prescribed by the Texas Probate Code." In addition to requiring that a holographic will be wholly in the decedent's handwriting, the pertinent provisions of the Texas Probate Code required the proponents of Ruby's non-self-proved holographic will to prove that: (1) the testator was at least eighteen years of age when the will was executed; (2) the testator was of sound mind; (3) the will was not revoked; (4) the testator is dead, and four years have not elapsed since the date of death prior to the application; (5) the court has jurisdiction and venue over the estate; and (6) citation was served as required by law. TEX. PROB. CODE ANN. §§ 57, 88 (Vernon 2003).

The district court's findings do not specify which of these grounds form the basis of its findings of fact. Therefore, we review all of the evidence in the record to evaluate whether the record supports the district court's finding under any of these six requirements. First, we note that in their brief, Appellees did not contradict the Statement of Facts in Appellant's brief. Therefore, under TEX.R.APP. P. 38.1(f), we accept Appellant's Statement of Facts as true.

It was undisputed that Ruby died May 5, 1998. As established by the certified copy of Ruby's death certificate, she was eighty-four years old at the time of her death. TEX. HEALTH & SAFETY CODE ANN. § 191.052 (Vernon 2001). Thus, the record shows that Ruby was over the age of eighteen in 1998 when she penned the 1998 Will.

■ The Probate Code also requires that a testator be "of sound mind" at the time of making a will. TEX. PROB.CODE ANN. § 57 (Vernon 2003). There is no definition

in the Probate Code of the term, and courts have defined it as having:

> sufficient ability to understand: her business upon which she is engaged; the effect of the act of making a will; the nature and extent of her property; the persons to whom she meant to devise and bequeath her property; and the persons dependent upon her bounty, and the mode of distribution among them. Further, the testatrix must have memory sufficient to collect in her mind the elements of the business to be transacted and hold them long enough to form a reasonable judgment.

*Schindler,* 119 S.W.3d at 931; *accord In re Estate of Blakes,* 104 S.W.3d 333, 336 (Tex. App.-Dallas 2003, no pet.); *In re Estate of Flores,* 76 S.W.3d 624, 630 (Tex.App.-Corpus Christi 2002, no pet.). In order to probate Ruby's 1998 holographic Will, Lloyd had to prove that Ruby was of sound mind when she signed the will, and he bore the burden of proving that Ruby had the requisite testamentary capacity. TEX. PROB.CODE ANN. § 88(b)(1) (Vernon 2003); *Croucher v. Croucher,* 660 S.W.2d 55, 57 (Tex.1983); *Seigler v. Seigler,* 391 S.W.2d 403, 404 (Tex.1965). As the party with the burden of proof, and since the trial court implicitly found that Lloyd had not proven that Ruby had the requisite testamentary capacity with respect to the 1998 holographic Will, Lloyd must demonstrate on appeal that the evidence before the district court established that Ruby had testamentary capacity as a matter of law. *In Re Neville,* 67 S.W.3d 522, 524 (Tex.App.-Texarkana 2002, no pet.).

The evidence in the record shows that when Ruby had an attorney draft the 1997 Will, Ruby was not under any undue influence and, according to the lawyer who drafted the 1997 Will, "[Ruby] was very particular about what she wanted" in the will drafted in December, 1997. There is

499

no testimony in the record by any witness regarding Ruby's mental capacity when she wrote the 1998 holographic Will. The only additional testimony in the record relevant to Ruby's testamentary capacity concerned Ruby's appearance before a justice of the peace on March 11, 1998 when Ruby purportedly revoked her 1997 Will. The justice of the peace testified that Mrs. Cornes appeared sane, rational, and understood what she was doing.

The 1998 holographic Will was not dated, and there was no testimony that showed the date on which Ruby signed it. However, the absence of a date on a holographic will is not fatal. *Cason v. Taylor,* 51 S.W.3d 397, 407 (Tex.App.-Waco 2001, no pet.); *Trim v. Daniels,* 862 S.W.2d 8, 10 (Tex.App.-Houston [1st Dist.] 1993, writ denied). Where there is no evidence of a testator's mental soundness on the date the testator executed a will, the fact finder "may also look to the testator's state of mind at other times if those times tend to show his state of mind on the day the will was executed." *In re Neville,* 67 S.W.3d at 525. However, when a testator's mental soundness is proven by evidence before or after the date the will was executed, the evidence "must show that the testator's condition persisted and probably was the same as that which existed at the time the will was signed." *Id.*

The 1998 holographic Will treated two of Ruby's children, Lloyd and Libby, more favorably than her other children. Although there was an explanation about why Ruby favored Libby (and had made a similar disposition in her 1997 Will to Libby), there was no explanation about why she would have changed her will to favor Lloyd. In fact, there was testimony from Marilyn that she knew of no reason why Ruby might have been angry at Marilyn, Charles or John. Libby testified that her mother would not have executed a will

without leaving part of her real property to Marilyn, Charles, and John. C.D., Ruby's son-in-law, a co-executor of her estate, and Libby's husband, testified that Ruby never wanted to leave any of her children out of the will and wanted everyone to get something. The trial judge was entitled to consider the change that favored Lloyd, absent an explanation, in weighing the evidence. *Dominguez v. Duran,* 540 S.W.2d 567, 571 (Tex.Civ.App.-Houston [1st Dist.] 1976, writ ref'd n.r.e.); *Miller v. Flyr,* 447 S.W.2d 195, 196 (Tex. Civ.App.-Amarillo 1969, writ ref'd n.r.e.).

While the evidence on the issue of testamentary capacity is sparse, Lloyd bore the burden of proof. Testamentary capacity "may be determined from lay opinion testimony based upon the witnesses' observations" that are reliable to show the testator was of sound mind. *Gillispie v. Reinhardt,* 596 S.W.2d 558, 560 (Tex.Civ.App.-Beaumont 1980, writ ref'd n.r.e.). Several of Ruby's children who were around Ruby on several occasions during 1997 and 1998 testified, and were most likely witnesses with relevant knowledge on whether Ruby was mentally sound during 1998 when she wrote the holographic will. Nevertheless, the record in this case reflects no lay opinion that established Ruby was of sound mind generally during 1998.

On this record, the district court was entitled to conclude that Lloyd failed to meet his burden of proving that Ruby had testamentary capacity when she executed the 1998 holographic Will. As a result, we decline to overturn the district court's order denying the request to probate the 1998 holographic Will. In light of our ruling that the district court did not commit error in rejecting the 1998 holographic Will because Lloyd failed to prove Ruby's soundness of mind when she executed the will, it is not necessary that we review the

evidence on the additional Probate Code requirements that Lloyd had to establish to have the 1998 holographic Will admitted to probate.

In summary, we hold that it was error to admit the 1997 Will to probate because it was offered without a legal excuse beyond the four-year period after Ruby's death. We also hold that Lloyd failed to meet his burden of proving testamentary capacity with respect to the 1998 holographic Will, and, as a result, the district court did not err in refusing to admit the 1998 holographic Will to probate. We affirm the district court's judgment denying the probate of the 1998 holographic Will. We reverse the district court's judgment admitting the 1997 Will to probate and render judgment that its admission to probate be denied.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.