Linda Ramirez LOPEZ, Appellant,

v.

Borghild HANSEN, Tore Andersen, Rune Andersen, and Bjorn Andersen, Appellees.

No. 01–96–00034–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 1, 1997.

Frank C. Farris, Houston, for Appellant.

Anita Krosby Cutrer, Fort Worth, for Appellee.

Before SCHNEIDER, C.J., and MIRABAL and O'CONNOR, JJ.

## OPINION

SCHNEIDER, Chief Justice.

The appellant, Linda Ramirez Lopez, appeals the trial court's judgment denying her application to probate the written will of the decedent, Elfi M. Keating. In two points of error, Lopez argues the trial court erred in refusing to file findings of fact and conclusions of law and in denying her application for the probate of Keating's holographic will. We affirm.

### Facts

Elfi M. Keating died at the age of 72 in Harris County, Texas, on November 18, 1992. She left an estate valued at approximately $150,000. Lindell Jenkins, a family friend, filed an application for probate of her holographic will. Jenkins also filed documents stating that someone, other than Keating, had changed the first page of Keating's will. The appellees, Borghild Hansen, Tore Andersen, Rune Andersen, and Bjorn Andersen (collectively, the heirs) filed an opposition to probate of the will. Subsequent to the heirs' opposition, Jenkins filed a motion to non-suit his application. On September 29, 1994, the trial court granted Jenkins' motion and entered a judgement of heirship declaring that Keating died intestate and ordering her property divided amongst the heirs, who live in Norway, according to Texas laws of intestate succession.

On February 13, 1995, the appellant, Linda Lopez, filed an application for probate of Keating's holographic will. After Lopez filed her application, the heirs filed a petition re-

stating their opposition to probate of the will. After a bench trial, the trial court entered a final judgment denying probate of the will. Lopez's counsel timely requested findings of fact and conclusions of law. After discovering the documents submitted for appeal did not include the trial court's findings of fact and conclusions of law, Lopez's counsel sent a letter to the trial court and again requested findings of fact and conclusions of law. The trial court did not respond to the second request.

## Standard of Review

 In a bench trial, where no findings of fact and conclusions of law are filed, the trial court's judgment implies all necessary findings of fact to support it. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989); *Baytown State Bank v. Nimmons,* 904 S.W.2d 902, 904 (Tex.App.—Houston [1st Dist] 1995, no writ). When the implied findings of fact are supported by evidence, it is an appellate court's duty to uphold judgment on any theory of law applicable to the case. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987); *Weng Enter. v. Embassy World Travel, Inc.* 837 S.W.2d 217, 223 (Tex.App.—Houston [1st Dist.] 1992, no writ). Implied findings may be challenged by factual and legal sufficiency points. *Roberson,* 768 S.W.2d at 281; *Giangrosso v. Crosley,* 840 S.W.2d 765, 769 (Tex.App.—Houston [1st Dist.] 1992, no writ).

## Findings of Fact and Conclusions of Law

In point of error one, Lopez argues the trial court erred by not filing findings of fact and conclusions of law. We disagree.

 The Rules of Civil Procedure provide that within 20 days after the judgment is signed, any party may request the trial court to state in writing its findings of fact and conclusions of law. TEX.R. CIV. P. 296; *Wallace v. Wallace,* 623 S.W.2d 723, 724 (Tex. App.—Houston [1st Dist.] 1981, writ dism'd). The record shows that Lopez timely requested findings of fact and conclusions of law, but that the trial court did not respond. When the court does not file findings of fact and conclusions of law, the party making the request shall, within 30 days after filing the original request, file with the clerk a "Notice of Past Due Findings of Fact and Conclusions of Law." TEX.R. CIV. P. 297; *Robles v. Robles,* No. 01–94–00367–CV, 1996 WL 443707, —— S.W.2d —— (Tex.App.—Houston [1st Dist.], Aug. 8, 1996, n.w.h.)(not yet reported). Lopez did notify the trial court of its failure to file the findings of fact and conclusions of law, but her request was sent after the deadline to submit notice had expired. Because Lopez did not meet the time requirement of rule 297, she waived her right to complain of any error on appeal. *Las Vegas Pecan & Cattle Co. v. Zavala Cty.,* 682 S.W.2d 254, 255 (Tex.1984); *Pierson v. GFH Fin. Servs. Corp.,* 829 S.W.2d 311, 314 (Tex. App.—Austin 1992, no writ).

We overrule point of error one.

## Probate of the Will

In point of error two, Lopez argues the trial court erred by refusing to probate the decedent's holographic will because the will was wholly in the testator's handwriting. We disagree.

 The will proponent has the burden of proving the holographic will is "wholly in the handwriting of the testator." TEX. PROB. CODE ANN. § 84(b) (Vernon 1984); *Gunn v. Phillips,* 410 S.W.2d 202, 205 (Tex.Civ. App.—Houston 1967, writ ref'd n.r.e.). "If not self proved as provided in [the probate] code, a will wholly in the handwriting of the testator may be proved by two witnesses to his handwriting, which evidence may be by sworn testimony or affidavit taken in open court." TEX. PROB.CODE ANN. § 84(b) (Vernon 1984); *see Trim v. Daniels,* 862 S.W.2d 8, 10 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

To meet this burden, Lopez offered the testimony of herself and her husband, Martin Lopez. At trial, Lopez testified that she was familiar with Keating's handwriting, and that the holographic will was wholly in Keating's handwriting. Lopez claimed she recognized Keating's handwriting because Keating would make "a list of things to get her from the store." Lopez further testified that Keating gave her an envelope that was not to be opened until she (Keating) died. This

envelope contained the will. At the conclusion of Lopez's testimony, the trial court requested Lopez to fold the will as it was folded inside the envelope. The trial court then expressed doubts that the will would fit into the envelope as Lopez had testified. The trial court then asked Lopez why, if the will did in fact fit in the envelope, did it not have any creases down the center or the sides. Lopez was unable to explain this discrepancy, but stated that Martin Lopez could testify that the will was folded in the envelope.

Martin Lopez also testified the handwriting and signature on the will was Keating's. He stated, however, that he had only seen Keating's handwriting on one occasion.

■ The appellees offered controverting evidence as to whether the holographic will was wholly written in Keating's handwriting, and this evidence is sufficient to support the trial judge's ruling denying application to probate the will. Abel Salazar, who lived with Keating during the two years before her death, testified he was familiar with Keating's handwriting. When handed a copy of Keating's will, he testified that neither the signature on the first page of the will nor the signature on the second page of the will belonged to Keating.

■ Because the witnesses could not testify that they saw Keating write the entire instrument in her own handwriting, their testimony was opinion evidence sufficient in itself to raise a factual issue, not conclusively establishing proof. *In re Estate of Roberts*, 661 S.W.2d 177, 181 (Tex.App.—San Antonio 1983, no writ). Thus, it was within the trial court's discretion to disbelieve the testimony and conclude the evidence was insufficient to prove the instrument in question was the last will and testament of the decedent. *Id.*

Based upon the record, we conclude there is sufficient evidence showing the holographic will was not entirely written in the Keating's handwriting. Because the record does not contain findings of fact and conclusions of law, and the evidence supports the implied findings of fact, we must uphold the trial court's judgment. *See Roberson*, 768 S.W.2d at 281; *Nimmons*, 904 S.W.2d at 904.

Therefore, we hold the trial court properly denied Lopez's application for probate of the will.

We overrule point of error two and affirm the judgment of the trial court.

O'CONNOR, J., dissents.

HEDGES, J., requested a vote to determine if the case should be heard *en banc*, pursuant to TEX.R.APP. P. 79(d), (e) and TEX.R.APP. P. 90(e).

SCHNEIDER, C.J., and COHEN, MIRABAL, WILSON, ANDELL, TAFT and NUCHIA, JJ., voted against *en banc* consideration.

O'CONNOR, HEDGES and ANDELL, JJ., voted in favor of en banc consideration.

HEDGES, J., joins Justice O'CONNOR'S dissent.

O'CONNOR, Justice, dissenting.

I dissent. The only credible evidence in this case is that the holographic will was written by and signed by the decedent, Elfi M. Keating.

### The Terms of the Holographic Will

According to the holographic will, Keating left her relatives in Norway all her money (about $94,000) to be divided equally between them. She wanted her knickknacks, rings, and watches to be sent to her niece in Norway. She left her house to Lindell Ray Jenkins, and at his death to Linda Ramirez (Lopez). She asked to be cremated and the ashes sent to Norway.

### Factual Summary

Before making a factual summary, I voice my objection to the panel's opinion relating as "facts" matters which are not facts in this case or any other. In the first paragraph under "Facts," only the first two sentences are facts; the rest of that paragraph is taken from pleadings filed by a person not a party to this suit and not supported by the pleadings, the brief, or the facts in this case. The "facts" contained in those sentences are not relevant to the issue in this case. Presum-

ably, the purpose in discussing matters plead elsewhere is to muddy the waters regarding the authenticity of the holographic will in this case. That should be left to the facts testified at the hearing, not the pleadings of a non-party. In fact, in their brief, the heirs note that Jenkins merely filed a motion to non-suit—there is no explanation of his motives or reasons for doing so.

Lopez testified at trial that Keating had been her next door neighbor for 30 years. Lopez often ran errands for Keating, who did not have a car. Lopez took her to the post office and the store, and would take Keating's dog to the vet. Lopez was close to Keating. Lopez testified that Keating, who had no children, let Lopez' children play in her yard, and gave them small gifts of candy. Once, when Keating was assaulted by her husband, Lopez took her in her house to protect her.

Lopez took care of Keating, particularly once she became feeble. Lopez, who thought Keating was poor, paid to have a telephone installed next to Keating's bed, and bought Keating a stool and a hand shower to use in the bathtub. She also bought Keating a blender, and prepared food for her. Lopez saw Keating's handwriting when Keating made lists of things for Lopez to pick up for her. Lopez saw Keating's signature when she deposited checks for Keating in her bank account and when she helped Keating fill in forms for prizes.

Keating told Lopez she wanted to return to Norway and spend her last days there. Keating wrote her Norwegian relatives and told them she wanted to return. Her relatives wrote back and told her that if she was not able to maintain herself, they did not want her to come. Keating was hurt by that.

Lopez testified that Keating gave her an envelope and told her to keep it in a safe place and not tell anyone she had it. Keating told her not to open the will until after she died. On the front side of the envelope was written in Keating's handwriting "Last Will and Testament," and on the reverse side was written "By Elfi M. Keating, Houston, the 25th of June of 1992." Lopez hid the will in her house. Keating made Lopez promise to look after her stuff and be in charge of having her buried.

On the day Keating died, when she was in the hospital, Lopez became concerned about the cost of burying her because she did not have the money to cover the costs of the burial. Lopez took the unopened envelope to the funeral home that Keating had told her to use, and asked the director if she would be able to bury her. Lopez told him that the envelope might contain some instructions. The director told her to open the letter, but she refused because Keating had told her not to open it until after she died. When Lopez got back to the hospital that day, Keating had just died. The hospital asked Lopez about relatives, and Lopez told them she did not know of any, but she had the envelope which she thought contained Keating's will. The doctor opened the envelope and found the names of relatives in the will. With the information in the will, the relatives in Norway were contacted. Lopez took care of the burial.

During the trial, Lopez was shown two letters and other notes written by Keating, which were introduced as comparative handwriting exemplars. Lopez testified Keating's handwriting was easily identifiable because Keating was Norwegian, and she made certain letters in a distinctive way. Lopez testified the lettering in the exhibits matched the handwriting in the holographic will. (The will is included as an appendix to this opinion).

Martin Lopez, husband of appellant, also testified that the handwriting on the will was Keating's handwriting and signature. He testified that he was a lathe operator and worked for Fluor Components. He knew Keating from 1991 until she died. He saw Keating write in her own handwriting when she wrote notes for him to take to the hardware store. Martin Lopez confirmed that his wife gave the envelope with the will to the doctor after Keating died, and the doctor opened the envelope. Martin Lopez also identified other exhibits as in the handwriting of Keating.

Able Salazar, a yard man, was called as a witness by Keating's relatives. He testified that he met Keating in 1991, when he

stopped by her house and asked about cutting her yard. In June of 1992 he moved in her house because he did not have a place to live. He saw her write a couple of times. He testified that her signature on her will was not correct and the second page was not in Keating's handwriting. On cross-examination, Salazar testified he did not see much of Keating's writing and could not confirm the letters written by Keating to her Norwegian relatives were in her handwriting; however, he said he recognized Keating's signature. Salazar testified he knew Keating's signature because she signed a note in someone else's writing, leaving him her house.

### The Signatures

The majority makes much of the fact Salazar, the yard man, said the signatures on the will were not Keating's Signature.[1] He was the only person to testify that the signatures were not the signatures of Keating. Salazar was not a completely unbiased witness. He had submitted for probate a small handwritten note, purportedly by Keating, leaving him the house. The note bears the distinctively irregular signature of Keating, but the statement leaving him the house was in a more readable and uniform writing style. (Exhibit 13, the note, is included in an appendix to this opinion). Thus, Salazar had been competing for the same asset that the holographic will gave to Lopez.

Salazar's testimony was completely undermined when he refused to admit that two letters introduced as exhibits were in the handwriting of Keating. The letters were written by Keating to her relatives in Norway and were produced during discovery. Everyone but Salazar admitted the letters were in Keating's handwriting.

The majority dismisses the testimony of Lopez and her husband, saying that their testimony was merely opinion evidence. However, there is other evidence that confirms the authenticity of the will. Lopez testified about keeping the will in the unopened envelope until after Keating died. Once the envelope was opened, the two-page

holographic will was the only source of information about the relatives; it contained their addresses that were used to contact them. Without the letter, no one would have known how to contact them.

Even though the fact finder is not bound by the opinions of witnesses, as the majority states, the fact finder is not permitted to completely disregard the evidence. The evidence in this case is sufficient to find that Keating wrote the will.

There is sufficient evidence in this record to conclude the holographic will was entirely written in Keating's handwriting, and thus it should have been admitted to probate. The implied finding that the holographic will was not entirely in Keating's hand is against the great weight of the evidence. We should sustain point of error two, and reverse.

HEDGES, J., joins this dissent.

---

1. The majority states that Salazar, the yard man, said that neither the signature on the first or second pages were Keating's signature. The will does not contain a signature on the first page; Keating simply wrote her name as part of the identity of a savings account.