In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-447 CV


____________________



IN THE ESTATE OF RUBY FOWLER CORNES






On Appeal from the 1A District Court


Newton County, Texas


Trial Cause No. 11708






 OPINION


 Lloyd Fowler, Sr. appeals from the trial court's denial of his Application to Set Aside
Order Probating Will, to Reinstate Application to Probate Holographic Will and Application
for Bill of Review. In this instrument, Lloyd Fowler, Sr. challenged the admission to probate
of a will signed by his mother, Ruby Fowler Cornes, and requested that a holographic will
be admitted to probate. In four issues, Lloyd complains that he did not have notice of the
application to probate the subject will; that the court erred in admitting the subject will to
probate; that judicial estoppel operates to prevent the probate of the subject will; and, that the
great weight and preponderance of evidence at the bill of review hearing supported a
holographic will that he offered as Ruby Cornes's last will and testament. We reverse and
render in part and affirm in part.

BACKGROUND

 All of the parties to this appeal, either by marriage or birth, are members of the same
family. For purposes of clarity, we refer to the parties by first name. 

 Ruby died May 5, 1998. At the time of her death, she was survived by her husband,
Wilburn H. Cornes, and five of her children from a prior marriage, Charles H. Fowler, John
W. Fowler, Marilyn Fowler Walton, Lloyd Fowler, Sr., and Jewel Elizabeth ("Libby")
Fowler. 

 Ruby executed a will on December 19, 1997 (the 1997 Will). At the time of her
death, Ruby owned 52.74 acres in Newton County, Texas and under the 1997 Will gave eight
acres each to Charles, John and Marilyn, four and seventy-two hundreths acres to Lloyd, and
the remainder, which included her home and over 24 acres, to Libby. 

 Ruby signed a holographic will in 1998 (the 1998 holographic Will). In the 1998
Will, Ruby directed that Lloyd and Libby receive the 52.74 acres of land in Newton County. 
The most significant difference between the gifts Ruby made in the 1997 Will and the 1998
Will was the distribution Ruby made of her land in Newton County. Ruby named her sons-in-law, Glen Walton (Marilyn's husband, hereafter Glen) and Charles Darwin Fowler
(Libby's husband, hereafter C.D.) as co-executors in both the 1997 and 1998 Wills. 

 On May 2, 2002, three years and 362 days after Ruby's death, C.D. applied to probate
the 1998 holographic Will in the county court of Newton County, Texas. A series of
amended applications followed, and the initial hearing regarding the attempt to probate the
holographic will occurred on June 25, 2002. No order was ever entered to probate the
holographic will. All of the applications to probate the 1998 holographic Will assert that
"Decedent left a valid Will dated 1998, which was never revoked and is filed herewith." 

On January 17, 2003, four years, eight months, and twelve days after Ruby's death,
Glen and C.D. filed to probate the 1997 Will, and jointly filed a document titled Application
for Probate of Will and Issuance of Letters Testamentary. The executors also changed
lawyers. The 2003 application, for the first time, asserts: Decedent left a written Will ("Will") dated the ____ day of
________, 1998, which has previously been filed herein. Applicants do
not believe that said document meets the requisites of a Will as
prescribed by the State of Texas. If the Court should so find that the
document [dated] the _______ day of ________________, 1998
entitled Last Will and Testament of Ruby Lee Fowler Cornes, does not
meet the requisites of a Will, then Applicants would request that the
Last Will and Testament attached hereto, dated December 19, 1997 be
admitted to probate. Said document dated December 19, 1997 is a valid
written will and has never been revoked and is filed herewith. 


Although the 2003 application to probate the 1997 Will recites that citation was
requested, the record reflects that no citations were issued. On January 17, 2003, the same
date the application was filed to probate the 1997 Will, the county judge signed an order
admitting the 1997 Will to probate, and found that the 1998 holographic Will "was not
executed with the formalities nor meet[s] the requisites of a Texas will." 

On June 13, 2003, Lloyd filed his application to set aside the order probating the 1997
Will, pursuant to Section 93 of the Texas Probate Code, and also filed a bill of review under
Section 31 of the Texas Probate Code. Tex. Prob. Code Ann. §§ 31, 93 (Vernon 2003). 
In his application, Lloyd complained that he was not given notice of the probate hearing at
which the county judge admitted the 1997 Will to probate, and also complained of other
errors in the county judge's decision to admit the 1997 Will to probate. On June 13, 2003,
the county judge, on his own motion, transferred the case to the district judge of Newton
County. On June 8, 2004, the district court held a trial on Lloyd's application. No party
requested a jury trial on the contested matters. Following the hearing, the district court
denied Lloyd's request to set aside the order admitting the 1997 Will to probate.NOTICE

The Probate Code, Section 128B requires notice by service of process to each heir
whose address can be ascertained by the applicant with reasonable diligence before the
probate of the will. Tex. Prob. Code Ann. § 128B (Vernon 2003). We hold that the county
judge erred in probating the 1997 Will without proper notice as required by the Probate
Code, and that the district court erred in failing to grant the Bill of Review wherein Lloyd
complained of the absence of proper notice.

However, the Probate Code further allows de novo review of the decision by a county
judge to admit a will to probate. Tex. Prob. Code Ann. § 5(b) (Vernon 2003); Trevino v.
Turcotte, 564 S.W.2d 682, 686 (Tex. 1978)(probate matters having their origin in county
court are tried de novo in district court). Because Lloyd timely filed his request with the
county court to review the admission to probate of the 1997 Will, he was free to assert all
grounds to demonstrate that the 1998 holographic Will was Ruby's last valid will and
testament and that it should have been admitted to probate, or to demonstrate any reasons that
the 1997 Will should not have been admitted to probate. 

The record shows that Lloyd was given a full opportunity to try all of the issues that
he raises in this appeal in a trial de novo in district court. Lloyd also does not assert that he
was foreclosed from fully developing any issue at the trial in the district court. "The sine qua
non of a de novo trial as that term is used to describe a retrial of a matter or controversy
theretofore tried by another tribunal is the nullification of the judgment or order of the first
tribunal and a retrial of the issues on which the judgment or order was founded." Southern
Canal Co. v. State Board of Water Eng'rs, 159 Tex. 227, 318 S.W.2d 619, 622 (Tex. 1958). 
 In the trial de novo, the district court could have granted Lloyd full relief from any
error made by the county judge in admitting the 1997 Will to probate. On proper proof, the
district court could have admitted the 1998 holographic Will to probate. Thus, any error
committed by the county court's failure to issue citation to give Lloyd notice of the hearing
was rendered harmless. London v. Chandler, 406 S.W.2d 203 (Tex. 1966)(party must show
prejudice when complaining about defect in citation). We hold that under the record in this
case the failure to give Lloyd notice of the January 17, 2003 hearing was harmless error. 

ERROR IN ADMITTING 1997 WILL TO PROBATE

Lloyd argues that the four-year limitation period of Section 73(a) of the Texas Probate
Code prohibits the admission of the 1997 Will. Section 73(a) provides:

(a) No will shall be admitted to probate after the lapse of four
years from the death of the testator unless it be shown by proof that the
party applying for such probate was not in default in failing to present
the same for probate within the four years aforesaid; and in no case
shall letters testamentary be issued where a will is admitted to probate
after the lapse of four years from the death of the testator.


Tex. Prob. Code Ann. § 73(a)(Vernon 2003). As used in this statute, "default" means
"failure to probate a will due to the absence of reasonable diligence on the part of the party
offering the instrument." Schindler v. Schindler, 119 S.W.3d 923, 929 (Tex. App. - Dallas
2003, pet. denied)(citing House v. House, 222 S.W. 322, 325 (Tex. Civ. App. - Texarkana
1920, writ dism'd w.o.j.)). 

 Ruby died May 5, 1998. The 1997 Will was first offered and also admitted to probate
on January 17, 2003. The proponents of the 1997 Will had the burden of showing an excuse
to justify their failure to timely offer the 1997 Will for probate. Schindler, 119 S.W.3d at
929. The only excuse offered by any of Ruby's children regarding the delay in submitting
the 1997 Will to probate was Libby's testimony that the delay in probating the will was "out
of respect for [their step-] dad [Wilburn Cornes]". The record also reflects that Wilburn died 
in October, 2002. It is possible that Wilburn might have opposed either of these wills. 
Under both wills, Ruby intentionally disinherited him. For example, Ruby states in her 1997
Will, "I have intentionally made no provision in this Will for my husband, Wilburn Hurshel
Cornes, and I direct that he shall take none of my property either under this Will or by the
laws of intestacy." Ruby wrote a similar provision in her holographic will. 

 Nevertheless, we have found no opinion in which an appellate court construing
Section 73 of the Probate Code has recognized respect for potential heirs as an excuse for the
devisees' delay in presenting a will for probate. According to Libby, she and her sister
Marilyn, and the co-executors of the 1997 Will, Glen and C.D., were all aware of the
existence of the 1997 Will and the 1998 holographic Will on the day of the funeral. Libby
testified that they notified Lloyd of the existence of both wills on the following day. 
According to Lloyd, within a month or so of Ruby's death, he went with Libby and John to
a lawyer's office in Jasper where he saw the holographic will. Charles and John, Ruby's
other two sons, although present, did not testify at the hearing. Thus, there is no evidence
in the record that shows an absence of knowledge by any of the parties to this appeal of the
existence of the 1997 Will.

 Family agreements to delay the probate of a will about which they had knowledge are
not sufficient to excuse non-compliance with the four-year limitation of the Probate Code. 
Brown v. Byrd, 512 S.W.2d 753, 757 (Tex. Civ. App. - Tyler 1974, no writ); Armendariz De
Acosta v. Cadena, 165 S.W. 555 (Tex. Civ. App. - El Paso 1914, error ref'd). 

 We find no evidence of a legal excuse in the record for the failure of these parties to
timely apply to probate the 1997 Will. Because the proponents of the 1997 Will did not carry
their burden to establish they were not in default of the time limits prescribed by the Probate
Code, the district court erred in denying the application to set aside the order probating the
1997 Will. The district court further erred in ordering that the 1997 Will remain admitted
to probate. In light of our disposition of this issue, we do not reach Lloyd's argument that the
1997 Will proponents were judicially estopped from probating the 1997 Will.

1998 HOLOGRAPHIC WILL - HANDWRITING REQUIREMENT 

 In its findings of fact, the district court found that the 1998 holographic Will was not
proven by two witnesses to be wholly in the handwriting of Ruby. Section 84(b) of the
Texas Probate Code requires that a holographic will, if not self-proven, be proven by two
witnesses. Tex. Prob. Code Ann. § 84(b) (Vernon 2003). 

 There were two witnesses who testified at the hearing before the district judge that the
1998 holographic Will was in Ruby's handwriting. Lloyd Fowler, the contestant, and Faye
Shipman, a questioned-documents examiner, both testified that the 1998 holographic Will
was all in Ruby's handwriting. Shipman was cross-examined regarding the fact that in one
place on the will, the date was originally written as 1996, but the 6 was written over to
signify an 8, resulting in the date's being 1998. Shipman attributed this change to the
author's correction of a mistake. Other parts of the 1998 holographic Will were dated 1998,
without correction. Shipman was also cross-examined about the fact that the will was written
in different pens. She agreed that the will may have been written in more than one sitting. 

 Although both Libby and Marilyn testified at the hearing before the district court,
neither of them testified that the 1998 holographic Will was not in Ruby's handwriting. 
C.D., Libby's husband and one of the co-executors, was the sole witness who questioned
whether the handwritten will was in Ruby's handwriting. C.D. testified on cross-examination:

Q. Do you think that Ms. Cornes wrote that handwritten Will dated on
the blank day of blank, 1998.

A. I think that she wrote some of it. I don't think that she wrote all of
it.

 However, no predicate was laid showing that C.D. was familiar with Ruby's
handwriting. C.D. also admitted to giving testimony before the county judge that the 1998
holographic Will was all in Ruby's handwriting. C.D. was the only witness who testified that
the will was not all in Ruby's writing.

 Lloyd, as the proponent of the holographic will, had the burden of proving that the
instrument was "wholly in the handwriting of the testator." Tex. Prob. Code Ann. § 84(b)
(Vernon 2003); Gunn v. Phillips, 410 S.W.2d 202, 205 (Tex. Civ. App. - Houston 1966, writ
ref'd n.r.e.). The testimony of two of the witnesses, Lloyd Fowler and Faye Shipman, an
expert, was clear, direct and positive on the question of whether the 1998 holographic Will
was all in Ruby's handwriting. The only contradictory evidence on the issue, from C.D., was
not clear, positive or direct; and, C.D.'s opinion suffers from the fact that there was no proof
that C.D. was familiar with Ruby's handwriting. When a witness is not properly qualified
to testify, opinion testimony amounts to conjecture and has no probative value. Leitch v.
Hornsby, 935 S.W.2d 114, 119 (Tex. 1996). 

 Lloyd argues that as a matter of law, on this record, the 1998 holographic Will should
have been admitted to probate. But, we also note that Lloyd Fowler's and Faye Shipman's
testimony that the will was wholly in Ruby's handwriting was opinion testimony. Neither
Faye Shipman nor Lloyd testified that they saw Ruby write the holographic will. While their
testimony raised a fact issue, under similar circumstances, two of our sister courts have stated
that the testimony of a witness who can testify the writing is the decedent's, but who did not
actually see the instrument written, is not considered conclusive on whether a will is entirely
in the decedent's writing. Lopez v. Hansen, 947 S.W.2d 587, 590 (Tex. App. - Houston [1st
Dist.] 1997, no pet.); In re Estate of Roberts, 661 S.W.2d 177, 181 (Tex. App. - San Antonio
1983, no writ). In these two cases, the appellate courts upheld trial courts' orders rejecting
holographic wills when the record contained contradictory evidence on whether the wills
were wholly in the writing of the decedents. As recently noted by the Texas Supreme Court,
"It is impossible to define precisely when undisputed evidence becomes conclusive." City
of Keller v. Wilson, No. 02-1012, 48 Tex. Sup. Ct. J. 848, 2005 WL 1366509, at *6 (Tex.
June 10, 2005). 

 The co-executors, Glen and C.D., argue that the fact that there were no eyewitnesses
to Ruby's writing the 1998 holographic Will permitted the trial court to conclude that the will
was not in her handwriting. The co-executors cite Lopez as authority for their contention. 
However, in Lopez, the proponents of the holographic will were not family members, and
their testimony was not free from contradiction. 947 S.W.2d at 589-90. In Lopez, the record
also contained testimony from a properly qualified witness familiar with the decedent's
handwriting who testified that the signature on the will was not the decedent's. Id. at 590. 
Lopez is distinguishable because there was no testimony at the trial contest over Ruby's wills
from a properly qualified witness that the handwriting on the 1998 holographic Will was not
Ruby's. This type of evidence was present in Lopez. 

 "The general rule is that opinion testimony, even when uncontroverted, does not bind
the jury unless the subject matter is one for experts alone[.]" Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 338 (Tex. 1998). Although we have no evidence in this record
of the accuracy of handwriting experts, in the absence of a record demonstrating a very high
degree of accuracy, the better practice in our opinion is to treat such evidence as non-binding. 
 Nevertheless, "proper review . . . prevents [fact-finders] from substituting their
opinions for undisputed truth." City of Keller, 2005 WL 1366509, at *7. The testimony in
the record from witnesses who were qualified as familiar with Ruby's writing reflected that
the 1998 Will was in Ruby's writing. The only testimony contrary to those opinions came
from a witness not shown to be familiar with Ruby's writing. Having carefully reviewed all
of the testimony in the record, we hold that the district court's finding that the 1998
holographic Will was not in Ruby's writing is against the greater weight and preponderance
of the evidence. 

HOLOGRAPHIC WILL-OTHER PROBATE CODE REQUIREMENTS

 The district court also found in its findings of fact that the 1998 holographic Will
"does not meet the requisites of a Will as prescribed by the Texas Probate Code." In addition
to requiring that a holographic will be wholly in the decedent's handwriting, the pertinent
provisions of the Texas Probate Code required the proponents of Ruby's non-self-proved
holographic will to prove that: (1) the testator was at least eighteen years of age when the
will was executed; (2) the testator was of sound mind; (3) the will was not revoked; (4) the
testator is dead, and four years have not elapsed since the date of death prior to the
application; (5) the court has jurisdiction and venue over the estate; and (6) citation was
served as required by law. Tex. Prob. Code Ann. §§ 57, 88 (Vernon 2003).

 The district court's findings do not specify which of these grounds form the basis of
its findings of fact. Therefore, we review all of the evidence in the record to evaluate
whether the record supports the district court's finding under any of these six requirements. 
 First, we note that in their brief, Appellees did not contradict the Statement of Facts
in Appellant's brief. Therefore, under Tex. R. App. P. 38.1(f), we accept Appellant's
Statement of Facts as true. 

 It was undisputed that Ruby died May 5, 1998. As established by the certified copy
of Ruby's death certificate, she was eighty-four years old at the time of her death. Tex.
Health & Safety Code Ann. § 191.052 (Vernon 2001). Thus, the record shows that Ruby
was over the age of eighteen in 1998 when she penned the 1998 Will. 

 The Probate Code also requires that a testator be "of sound mind" at the time of
making a will. Tex. Prob. Code Ann. § 57 (Vernon 2003). There is no definition in the
Probate Code of the term, and courts have defined it as having:

sufficient ability to understand: her business upon which she is
engaged; the effect of the act of making a will; the nature and
extent of her property; the persons to whom she meant to devise
and bequeath her property; and the persons dependent upon her
bounty, and the mode of distribution among them. Further, the
testatrix must have memory sufficient to collect in her mind the
elements of the business to be transacted and hold them long
enough to form a reasonable judgment.


Schindler, 119 S.W.3d at 931; accord In re Estate of Blakes, 104 S.W.3d 333, 336 (Tex.
App. - Dallas 2003, no pet.); In re Estate of Flores, 76 S.W.3d 624, 630 (Tex. App. - Corpus
Christi 2002, no pet.). In order to probate Ruby's 1998 holographic Will, Lloyd had to prove
that Ruby was of sound mind when she signed the will, and he bore the burden of proving
that Ruby had the requisite testamentary capacity. Tex. Prob. Code Ann. § 88(b)(1)
(Vernon 2003); Croucher v. Croucher, 660 S.W.2d 55, 57 (Tex. 1983); Seigler v. Seigler,
391 S.W.2d 403, 404 (Tex. 1965). As the party with the burden of proof, and since the trial
court implicitly found that Lloyd had not proven that Ruby had the requisite testamentary
capacity with respect to the 1998 holographic Will, Lloyd must demonstrate on appeal that
the evidence before the district court established that Ruby had testamentary capacity as a
matter of law. In Re Neville, 67 S.W.3d 522, 524 (Tex. App. - Texarkana 2002, no pet.). 

 The evidence in the record shows that when Ruby had an attorney draft the 1997 Will,
Ruby was not under any undue influence and, according to the lawyer who drafted the 1997
Will, "[Ruby] was very particular about what she wanted" in the will drafted in December,
1997. There is no testimony in the record by any witness regarding Ruby's mental capacity
when she wrote the 1998 holographic Will. The only additional testimony in the record
relevant to Ruby's testamentary capacity concerned Ruby's appearance before a justice of
the peace on March 11, 1998 when Ruby purportedly revoked her 1997 Will. The justice of
the peace testified that Mrs. Cornes appeared sane, rational, and understood what she was
doing. 

 The 1998 holographic Will was not dated, and there was no testimony that showed
the date on which Ruby signed it. However, the absence of a date on a holographic will is
not fatal. Cason v. Taylor, 51 S.W.3d 397, 407 (Tex. App. - Waco 2001, no pet.); Trim v.
Daniels, 862 S.W.2d 8, 10 (Tex. App. - Houston [1st Dist.] 1993, writ denied). Where there
is no evidence of a testator's mental soundness on the date the testator executed a will, the
fact finder "may also look to the testator's state of mind at other times if those times tend to
show his state of mind on the day the will was executed." In re Neville, 67 S.W.3d at 525. 
However, when a testator's mental soundness is proven by evidence before or after the date
the will was executed, the evidence "must show that the testator's condition persisted and
probably was the same as that which existed at the time the will was signed." Id.

 The 1998 holographic Will treated two of Ruby's children, Lloyd and Libby, more
favorably than her other children. Although there was an explanation about why Ruby
favored Libby (and had made a similar disposition in her 1997 Will to Libby), there was no
explanation about why she would have changed her will to favor Lloyd. In fact, there was
testimony from Marilyn that she knew of no reason why Ruby might have been angry at
Marilyn, Charles or John. Libby testified that her mother would not have executed a will
without leaving part of her real property to Marilyn, Charles, and John. C.D., Ruby's son-in-law, a co-executor of her estate, and Libby's husband, testified that Ruby never wanted to
leave any of her children out of the will and wanted everyone to get something. The trial
judge was entitled to consider the change that favored Lloyd, absent an explanation, in
weighing the evidence. Dominguez v. Duran, 540 S.W.2d 567, 571 (Tex. Civ. App. --
Houston [1st Dist.] 1976, writ ref'd n.r.e.); Miller v. Flyr, 447 S.W.2d 195, 196 (Tex. Civ.
App. - Amarillo 1969, writ ref'd n.r.e.). 

 While the evidence on the issue of testamentary capacity is sparse, Lloyd bore the
burden of proof. Testamentary capacity "may be determined from lay opinion testimony
based upon the witnesses' observations" that are reliable to show the testator was of sound
mind. Gillispie v. Reinhardt, 596 S.W.2d 558, 560 (Tex. Civ. App. - Beaumont 1980, writ
ref'd n.r.e.). Several of Ruby's children who were around Ruby on several occasions during
1997 and 1998 testified, and were most likely witnesses with relevant knowledge on whether
Ruby was mentally sound during 1998 when she wrote the holographic will. Nevertheless,
the record in this case reflects no lay opinion that established Ruby was of sound mind
generally during 1998.

 On this record, the district court was entitled to conclude that Lloyd failed to meet his
burden of proving that Ruby had testamentary capacity when she executed the 1998
holographic Will. As a result, we decline to overturn the district court's order denying the
request to probate the 1998 holographic Will. In light of our ruling that the district court did
not commit error in rejecting the 1998 holographic Will because Lloyd failed to prove
Ruby's soundness of mind when she executed the will, it is not necessary that we review the
evidence on the additional Probate Code requirements that Lloyd had to establish to have the
1998 holographic Will admitted to probate.

 In summary, we hold that it was error to admit the 1997 Will to probate because it was
offered without a legal excuse beyond the four-year period after Ruby's death. We also hold
that Lloyd failed to meet his burden of proving testamentary capacity with respect to the
1998 holographic Will, and, as a result, the district court did not err in refusing to admit the
1998 holographic Will to probate. We affirm the district court's judgment denying the
probate of the 1998 holographic Will. We reverse the district court's judgment admitting the
1997 Will to probate and render judgment that its admission to probate be denied. 

 AFFIRMED IN PART; REVERSED AND RENDERED IN PART.


 ___________________________

 HOLLIS HORTON

 Justice




Submitted on August 18, 2005

Opinion Delivered August 31, 2005

Before McKeithen, C.J., Gaultney and Horton, JJ.