Opinion issued December 23, 2010


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-08-00496-CV

———————————

Jeffery B. Kaiser, Appellant

V.

Anita K. M. Silfvast, Appellee



 



 

On Appeal from the 309th District Court

Harris County, Texas



Trial Court Case No. 1998-49588

 



 

MEMORANDUM OPINION

          Appellant,
Jeffery Kaiser, appeals the trial court’s judgment that awards appellee, Anita Silfvast,
his former wife, $80,000 in unpaid alimony and $7,500 in attorney’s fees.  In two issues, Kaiser contends that the trial
court rendered a judgment that (1) violated the intent of the parties, and (2)
constituted an unenforceable penalty.

We affirm.

BACKGROUND

          In
August 1988, Kaiser married Silfvast, a citizen of Finland.  During their marriage, the couple had two
children and resided in Houston, Texas.  Kaiser
and Silfvast separated in September 1998, and Kaiser petitioned for divorce one
month later.  The primary issue in the
divorce was the domicile restriction requested by Kaiser, who sought to prevent
Silfvast from removing the children from the United States to Finland.

In May 1999, the parties entered
into a Mediation Agreement.  Under the
Mediation Agreement, the children’s domicile was restricted to Harris, Fort
Bend, or Montgomery Counties in Texas “until further order of the court.”  The mediation agreement noted that Kaiser’s
support obligations for Silfvast were contingent upon her residence in one of
the three counties, and if she decided to move outside of those areas, then
Kaiser’s support obligations “evaporate[d]” immediately, along with any
restrictions on Silfvast’s and the children’s residence.  

On June 21, 1999, two events
occurred.  First, the couple signed a “Contract
for Support of Wife” (“Contract for Support”). 
The Contract obligated Kaiser to pay alimony on the fifteenth day of each
month until May 15, 2004.  Section
1.05(c)(3) of the Contract provided that Kaiser’s alimony obligation would
terminate:

Upon [Silfvast’s] moving
herself and the children to a residence outside of Harris County, Fort Bend or
the Woodlands in Montgomery County, Texas. 


 

The
Contract also provided in section 1.09, entitled “Default and Acceleration”:

If default is made by
[Kaiser] in the prompt payment of any periodic amounts due under the terms of
this agreement and such default continues for a period of more than sixty (60)
days, the entire remaining alimony obligation of [Kaiser], at the option of Receiving
Party, [Silfvast], shall then be accelerated and shall become immediately due
and payable . . . unless [Silfvast] has moved outside Harris County, Fort Bend
or the Woodlands in Montgomery County, Texas in which case the alimony will
terminate.

 

On June 21, the trial court also
entered the Final Decree of Divorce (“the Decree”).  The Mediation Agreement was merged into the
Decree.  The Decree provided that the Decree
controlled over any conflicting provisions in the Mediation Agreement.  The Decree also incorporated the parties’
Contract for Support.  Neither the Decree
nor the Contract for support specified which document controlled in cases of
conflicting provisions.  The Decree
provided:

In the event [Kaiser]
defaults on payment of child support, payment of alimony, payment of private
school tuition for the minor children or reimbursement to [Silfvast] . . . ,
the residence restriction relating to primary residence of the children . . . shall
immediately terminate and [Silfvast] shall be immediately released from any
obligation to continue to maintain primary residence of the children within
Harris County, Texas, Fort Bend County, Texas, or the Woodlands in Montgomery
County, Texas.  

 

It is further ordered that,
should [Kaiser] default on any of the support or reimbursement obligations set
out above, [Silfvast] shall have the right to move to Finland with the children
. . . .  

 

Default for purpose of the
clause is defined as [Kaiser] being more than twenty (20) days late on the
payment of any of the above referenced obligations . . . or [Kaiser] failing to
make a support payment or reimbursement payment as set out above within fifteen
(15) days of a due date more than five (5) times in a calendar year.  

 

In 2001, Kaiser failed to make
payments on his alimony obligation for the August 15, September 15, and October
15 due dates.  On November 3, 2001, Silfvast
sent a certified letter notifying Kaiser of his default.  She also notified Kaiser that because his
default on the alimony payments was beyond 60 days, she was providing notice of
acceleration and accelerating the remaining alimony obligation.  On November 20, 2001, Kaiser made a payment
to Silfvast of $5,000 that Silfvast accepted. 
On December 24, 2001, Silfvast traveled with the children to
Finland.  On January 2, 2002, Silfvast
notified Kaiser of her intent to stay with the children in Finland.  Silfvast later returned to the United States
and resided in Harris County.

Silfvast sued Kaiser for breach of
the Contract for Support on December 18, 2003. 
Kaiser counterclaimed for breach of contract, fraudulent inducement, and
intentional infliction of emotional distress. 
The trial court held a bench trial on January 29, 2008.  Both parties submitted trial briefs over the
next several months outlining their legal arguments and responding to the
opposing party’s arguments.  

On May 13, 2008, the trial court
rendered judgment in favor of Silfvast and granted Silfvast a recovery of $80,000
in unpaid contractual alimony and $7,500 in attorney’s fees.  Kaiser formally requested the trial court
file its Findings of Fact and Conclusions of Law.  The trial court did not file any findings or
conclusions. This appeal followed.  

ACCELERATION OF ALIMONY OBLIGATION

In his first issue, Kaiser contends the trial court erred by
allowing Silfvast to recover $80,000 in unpaid contractual alimony.  He contends the trial court based its order
on a misinterpretation of the intent of the parties as expressed in their
divorce decree and its incorporated agreements. 


A.      Standard of Review 

In a bench trial, where no findings of fact and
conclusions of law are filed, the trial court’s judgment implies all necessary
findings of fact to support it.[1]
  Ryan v.
Abdel-Salam, 39 S.W.3d 332, 335 (Tex. App.—Houston [1st Dist.] 2001, pet.
denied); Lopez v. Hansen, 947 S.W.2d 587, 589 (Tex. App.—Houston [1st
Dist.] 1997, no writ).  When the implied facts are supported by
evidence, it is our duty to uphold judgment on any theory of law applicable to
the case.  Lopez, 947
S.W.2d at 589. 

          B.      Applicable
Law

Here,
the parties entered into a contract for spousal support.  Unlike other forms of spousal maintenance,
contractual alimony is not void as being in violation of state public policy.  Birdwell
v. Birdwell, 819 S.W.2d 223, 225–27 (Tex. App.—Fort Worth 1991, writ
denied).  Instead, “an assumed obligation
for spousal support is properly characterized as a contractual duty having whatever
legal force the law of contracts will give to it.”  Woolam
v. Tussing, 54 S.W.3d 442, 447 (Tex. App.–Corpus Christi 2001, no pet.).  When an agreement for the payment of alimony
is executed by the parties and incorporated into the judgment of divorce, as it
was in this case, it is binding on the parties and is interpreted under general
contract law. Schwartz v. Schwartz,
247 S.W.3d 804, 806 (Tex. App.—Dallas 2008, no pet.).  

An
agreed divorce decree is also
subject to the usual rules of contract interpretation.  Chapman v. Abbot, 251 S.W.3d 612, 616 (Tex. App.—Houston
[1st Dist.] 2007, no pet.).  Our primary concern in interpreting a
contract is to ascertain and give effect to the true intentions of the parties
as expressed in the written agreement.  Id. To
achieve this objective, courts should examine the entire writing in an effort
to harmonize and give effect to all the provisions of the contract so that none
will be rendered meaningless.  Id.  We accord contract language its plain, grammatical meaning
unless it definitely appears that the intention of the parties would thereby be
defeated.  Lyons v. Montgomery, 701 S.W.2d 641, 643 (Tex. 1985); Chapman, 251 S.W.3d at 617.  Because
the Contract for Support was integrated into the divorce decree, we may read
the two instruments together to ascertain the parties’ intent and we construe
both documents as a single, unified instrument.  See Fort Worth
Indep. School Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000); Gray & Co.
Realtors, Inc. v. Atlantic Housing Found., Inc., 228 S.W.3d 431, 436 (Tex.
App.—Dallas 2007, no pet.) (“instruments pertaining to the same transaction may
be read together to ascertain the parties’ intent,” and “in appropriate
instances, courts may construe all the documents as if they were part of a
single, unified instrument”).  

C.      Analysis

Kaiser contends that the trial court misinterpreted the intent of
the parties as expressed in the written Contract for Support and Decree.  Kaiser asserts the actual intent of the
parties was that Kaiser’s alimony obligation, and Silfvast’s right to collect
on that obligation, would terminate if she moved their children to Finland, notwithstanding
his default or her acceleration.

The Decree and Contract for Support both define default
similarly.  Default under either document
is defined as Kaiser “being more than twenty (20) days late on the payment of
any [alimony] or [Kaiser] failing to make a[n alimony] payment . . . within
fifteen (15) days of a due date more than five (5) times in a calendar year.”  Kaiser was more than 20 days late on the
January, February, April, August, September, and October alimony due
dates.  The record shows that Kaiser,
therefore, defaulted on his contractual alimony obligation.

          Under the Decree, if Kaiser “defaults on
payment of . . . alimony . . . the residence restriction relating to the
primary residence of the children . . . shall immediately terminate and
[Silfvast] shall be immediately released from any obligation to continue to
maintain primary residence of the children within Harris County, Texas, Fort
Bend County, Texas or the Woodlands in Montgomery County, Texas.”  Additionally, “should [Kaiser] default on
[the alimony obligation, Silfvast] shall have the right to move to Finland with
the children . . . .”  Because Kaiser was
in default, Silfvast was immediately released from any residency obligation.

The Contract for Support defined when Silfvast could accelerate
the alimony payments, once Kaiser was in default.  The Contract for Support states: 

The Paying Party, [Kaiser], agrees that time is of the essence in
the payment of the periodic alimony payments. 
If default is made by Paying Party in the prompt payment of any periodic
amounts due under the terms of this agreement and such default continues for a
period of more than sixty days (60) days, the entire remaining alimony
obligation of Paying Party, at the option of Receiving Party, [Silfvast], shall
then be accelerated and shall become immediately due and payable . . . .  

 

The
record shows that October 28, 2001, was the first date that Kaiser was in
default for more than 60 days.  Once
Kaiser was in default for over 60 days, Silfvast had the right to accelerate
under the Contract for Support, which, as the parties agree, she did on
November 3, 2001.  Once Silfvast
accelerated, she cut off Kaiser’s right to cure his default and the entire
remaining alimony obligation became due and payable.  EMC
Mortg. Corp. v. Window Box Ass’n, Inc., 264 S.W.3d 331, 337 (Tex. App.—Waco
2008, no pet.) (holding notice of acceleration, in absence of contrary
agreement or waiver, cuts off debtor’s right to cure default and gives notice
that entire debt is due and payable) (citing Ogden v. Gibraltar Sav. Ass’n, 640 S.W.2d 232, 234 (Tex. 1982)).

          Kaiser contends that even if the debt
was already accelerated, the accelerated obligation disappeared once Kaiser
moved to Finland.  The crux of Kaiser’s
argument before the trial court and on appeal is based upon the final sentence
of the “Default and Acceleration” paragraph in the Contract for Support.  That provision states, “If [Kaiser] defaults
. . . the entire remaining alimony obligation of Paying Party, at the option of
Receiving Party, [Silfvast], shall then be accelerated and shall become
immediately due and payable . . . unless [Silfvast] has moved outside Harris
County, Fort Bend County or the Woodlands in Montgomery County, Texas, in which
case the alimony will terminate.”  Kaiser
asserts that this sentence indicates the intent of the parties was that Kaiser’s
alimony obligation immediately terminated if Silfvast moved outside the three-
county area, notwithstanding Kaiser’s default or Silfvast’s acceleration.  We disagree. The language of the Default and
Acceleration provision means that Silfvast would not be able to accelerate if she
had previously defaulted herself by moving outside the three-county area prior
to his default, or if she had moved outside the three-county area prior to her
acceleration.  On the date she
accelerated, Silfvast still resided in Harris County.  Because Silfvast still resided in the
three-county area at the time she accelerated, she had the right to
accelerate.  Once she accelerated, the
debt became due and payable, and the residency provision in the Default and
Acceleration paragraph was no longer applicable. 

Kaiser also contends Silfvast could not “unilaterally revive” his
alimony obligation once she returned from Finland and again established
residency in the three-county area. 
Because Kaiser’s accelerated alimony obligation was due and payable once
Silfvast accelerated, Kaiser’s accelerated obligation did not “terminate” when
Silfvast moved to Finland, and, therefore, Silfvast did not need to revive the
accelerated obligation when she returned to the U.S.

Taking into
consideration that (1) Kaiser defaulted, (2) Kaiser remained in default for
more than 60 days, (3) Silfvast accelerated Kaiser’s unpaid alimony obligation,
and (4) Silfvast was still a resident of Harris County when she accelerated, we
hold that the trial court did not err by awarding Silfvast the $80,000 in unpaid contractual alimony in
accordance with the parties’ contractual terms. 
See Lopez, 947
S.W.2d at 589.

We overrule Kaiser’s first issue.

PENALTY

In his second issue, Kaiser asserts
that the acceleration clause, which was incorporated into the final divorce
decree, acted as an unenforceable penalty. 
Unlike an ordinary contract, a divorce decree is a final judgment and
must be appealed within the trial court’s plenary power, at most 105 days after
the judgment is signed.  See Hagen v. Hagen, 282 S.W.3d 899, 902
(Tex. 2009); In re Provine, 312
S.W.3d 824, 829–30 (Tex.
App.—Houston [1st Dist.] 2009, no pet.). 
If an appeal is not timely perfected from the divorce decree, res
judicata bars a subsequent collateral attack. 
Hagen,  282 S.W.3d at  902; Treadway
v. Shanks, 110 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 2000), aff’d, 110 S.W.3d 444 (Tex. 2003).  Even if a final judgment is erroneous or
voidable, it is not void and subject to collateral attack if a trial court had
jurisdiction over the parties and subject matter.  Hagan,
282 S.W.3d at 902; See also Jones v.
Jones, 900 S.W.3d 786, 788 (Tex. App.—San Antonio 1995, writ. denied).

Here, the final divorce decree
incorporating the “Contract for Support of Wife” was entered by the trial court
on June 21, 1999.  Our record contains no
suggestion that either party objected to or appealed from the final divorce
decree.  Kaiser may not now collaterally
attack a provision of an unappealed divorce decree by characterizing it as an
unenforceable penalty.  See Jones, 900 S.W.3d at 788.

We overrule Kaiser’s second issue.

CONCLUSION

          We affirm the judgment of
the trial court.

 

 

 

 

Sherry
Radack

                                                                   Chief
Justice 

 

Panel consists
of Chief Justice Radack and Justices Alcala and Massengale.

 











[1]           The Rules of Civil Procedure provide
that within 20 days after the judgment is signed, any party may request the
trial court to state in writing its findings of fact and conclusions of
law.  Tex.
R. Civ. P. 296.  The record shows
that Kaiser timely requested findings of facts and conclusions of law, but that
the trial court did not respond.  If the
trial court fails to file timely findings of fact and conclusions of law, the
requesting party must file a notice of past due findings of fact and
conclusions of law within 30 days after filing the original request to prevent
waiver of error regarding a court’s failure to file its findings of fact and
conclusions of law.  Tex. R. Civ. P. 297; Lopez v. Hansen, 947 S.W.2d 587, 589 (Tex. App.−Houston [1st Dist.] 1997, no writ).  The record does not show that Kaiser filed a
notice of past due findings of fact and conclusions of law.